**Linda Koester COX and Orville Ira Cox, Appellants,**

v.

**The STATE of Texas, Appellee.**

Nos. 14–99–00293–CR, 14–99–00294–CR, 14–99–00916–CR, 14–99–00917–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 30, 2002.

Rehearing Overruled Aug. 1, 2002.

Katherine Scardino, Stanley G. Schneider, Houston, for appellants.

Kelly Ann Smith, Houston, for appellees.

Panel consists of Justices YATES, SEYMORE, and FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice,

In this consolidated appeal, Linda and Orville Cox attack the legal sufficiency of the evidence supporting a conviction for theft.[1] Appellants contend the evidence establishes a contractual dispute and thus cannot form the basis of a criminal complaint. We disagree and affirm.

### Background

Appellants, husband and wife, operated three crafts stores under the name of "Linda's Emporium." At least one of these stores had been in operation since 1992. Pursuant to a written License and Use Agreement ("License Agreement"), local craftsmen, the complainants, licensed booths within appellants' stores and provided the appellants' inventory. Appellants were required to remit the proceeds from sales of the crafts to the craftsmen, less a commission and a monthly license fee.[2] Appendix "A" to the License Agreement (the "Operating Policy"), stated that appellants closed their books for accounting purposes on the 25th of each month. According to the Operating Policy, checks for sales occurring prior to the 25th day of each month were to be mailed to the crafters "on or about the first.... Minor variances by a very few days may occur periodically, due to holidays and other unavoidable occurrences."

Appellants began to experience financial difficulties between Thanksgiving and Christmas of 1996. They shuffled money among several banks, withdrew large sums of money in cash, ceased to timely mail crafters their checks, removed and destroyed their business records, and moved out of their home. They did, however, pay their landlords $60,000 to keep the doors to their stores open during the month of December.[3] During the first few days of January, a number of the crafters removed their merchandise from the stores because they heard appellants were removing business records. By January 5, 1997, appellants' business accounts were virtually empty, yet approximately $350,000 was owed to crafters. Records of sales at appellants' stores were eventually discovered in the trash. The complainants consist of approximately 70 craftsmen. According to Harris County Fraud Examiner David Pilint, these 70 are collectively owed $143,887.38.

After a trial to the bench, appellants were convicted and given a 10–year probated sentence. One condition of probation requires that appellants pay $143,887.38 to the crafters.

### Issue

The narrow and sole contention lodged by appellants is that there is a dispute as

---

1. Cause numbers 14–99–00916–CR and 14–99–00917 were appeals from the trial courts denial of indigency. We affirmed the denial in an order dated June 15, 2000.

2. The License Agreement provides that the inventory continued to be owned by the craftsmen. It does not indicate whether the sale proceeds generated were owned by the craftsman or appellants, but it does explicitly grant appellants a security interest in all proceeds from sales of the complainants goods, wares, ... and other personal property ... situated on the licensed premises.

3. At oral argument, counsel for appellants indicated that only two stores were operating during the pertinent time period. The third store was closed, though appellants continued to pay rent for three stores.

to ownership of the proceeds from the craft sales. Under the penal code, an "owner" is someone having title, possession, or a greater right to possession of the property than the actor. Tex. Penal Code § 1.07(a)(35).

## Standard of Review

▆▆▆ Evidence is legally sufficient if, viewed in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In performing a legal sufficiency analysis, we review the evidence in the light most favorable to the verdict. *Maldonado v. State,* 998 S.W.2d 239, 251 n. 3 (Tex.Crim. App.1999) (citing *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). This same standard of review applies to cases involving both direct and circumstantial evidence. *See King v. State,* 895 S.W.2d 701, 703 (Tex. Crim.App.1995). On appeal, we do not reevaluate the weight and credibility of the evidence; rather, we consider only whether the fact finder reached a rational decision. *See Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993).

## Discussion

A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of property. Tex. Penal Code § 31.03(a) (Vernon Supp. 2002). Appropriation is unlawful only if it is "without *the owner's* effective consent." *Id.* § 31.03(b)(1) (italics added).

▆▆▆ According to appellants, application of the Uniform Commercial Code (UCC) to

the License Agreement dictates that each crafter owned a receivable or debt upon the sale of a craft good, while appellants owned the proceeds from the sale. The State counters that the UCC is irrelevant and that the Penal Code is the sole source of authority. The State contends appellants acted as the craftsmen's sales agents, owed the craftsmen a fiduciary duty, and committed theft when they failed to disburse the sales proceeds to the crafters.

We agree with the State that reference to the UCC is inappropriate under the facts presented. Under the penal code, an "owner" is someone having title, possession, or a greater right to possession of the property than the actor. *Id.* § 1.07(a)(35). The indictment in this case charged appellants with unlawfully appropriating money to which the complainants had a greater right of possession. Because the provisions of the UCC cited by appellants do not address rights of possession, they offer no guidance in the case at bar. *See Benjamini, Inc. v. Dickson,* 2 S.W.3d 611, 614 (Tex.App.-Houston [14th Dist.] 1999, no writ).[4]

▆▆▆ Even if, following appellants' interpretation of the License Agreement, appellants had a greater right to possession of the proceeds through December, when the crafters checks were to be disbursed, the crafters' right to possession was clearly greater than appellants' after January 1, 1997. The Operating Agreement between appellants and the complainants explicitly provides that checks were to be mailed out on the first day of January, absent circumstances not applicable here. The indictment charged appellants with theft "on or about various dates between November 23,

4. In *Benjamini,* an employee stole property and sold it to Mr. Benjamini. This court affirmed an order returning the property even though Mr. Benjamini claimed a right to the property under the UCC's protection for good

faith purchasers. This court held the penal codes language demonstrated no intent to adopt the civil standards set forth in the UCC and the latter was therefore inapplicable.

1996 and January 3, 1997." Thus, the time period alleged in the indictment encompasses the time period required to prove theft even if appellants owned the proceeds of the craft sales at the time of sale.

While the analogy is imperfect, the alleged problem appellants identify is similar to that presented in *Kitchens v. State*, 823 S.W.2d 256 (Tex.Crim.App.1991). In *Kitchens*, the State contended the complainant was murdered either in the course of a robbery or in the course of a rape. Mr. Kitchens contended the evidence was legally insufficient to prove the rape. In affirming, the Court held the conviction would stand if the evidence was sufficient to prove either the rape or the robbery. *Id.* at 259. In the instant case, the indictment identifies a time span during at least some part of which the complainants owned the money appellants appropriated. If the complainants owned the sale proceeds immediately after each sale, the theft occurred continuously during the months of November and December. On the other hand, if appellants owned the proceeds, the theft occurred on January 1st. Under *Kitchens*, the State need only offer proof of either scenario to secure a conviction. *Id.*

The evidence in the record establishes no checks for December sales were ever mailed. Many of the complainants testified they never received the payment due to have been mailed on January 1st. Viewed in the light most favorable to the verdict, this evidence is sufficient to enable a rational jury to conclude the complainants, not appellants, had the greater right to possession to the proceeds of craft sales, less deductible fees, during a time period within that identified in the indictment. *See Maldonado v. State*, 998 S.W.2d at 251 n. 3. We overrule appellants' issue.

Accordingly, the judgments below are affirmed.