# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00636-CR

**Ex parte Tammy Balderrama**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
## NO. 9014165, HONORABLE JON N. WISSER, JUDGE PRESIDING

## O P I N I O N

Tammy Balderrama was placed on ten years' community supervision after she was convicted of theft by a public servant. *See* Tex. Pen. Code Ann. § 31.03(a), (f)(1) (West Supp. 2006). This Court affirmed the conviction. *Balderrama v. State*, No. 03-02-00259-CR, 2003 Tex. App. LEXIS 5105 (Tex. App.—Austin June 19, 2003, pet. ref'd) (not designated for publication). Two years later, Balderrama applied for a writ of habeas corpus urging that the attorney who represented her in the original appeal was ineffective because he did not challenge the legal sufficiency of the evidence and asking for a second, out-of-time appeal in which to raise this contention. *See Ex parte Daigle*, 848 S.W.2d 691, 692 (Tex. Crim. App. 1993). The district court denied the requested relief. We affirm the district court's order.

I.

We first address a procedural issue raised by the State. Balderrama's writ application invoked code of criminal procedure article 11.08, which has been held to be the appropriate

procedural vehicle for a person on felony probation seeking post-conviction habeas corpus relief. Tex. Code Crim. Proc. Ann. art. 11.08 (West 2005); *see Rodriguez v. Court of Appeals*, 769 S.W.2d 554, 557 (Tex. Crim. App. 1989); *Ex parte Renier*, 734 S.W.2d 349, 353 (Tex. Crim. App. 1987). The State argues, however, that the writ application should have been filed pursuant to article 11.072. Tex. Code Crim. Proc. Ann. art. 11.072 (West 2005). Enacted in 2003, article 11.072 "establishes the procedures for an application for a writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision." *Id.* § 1. Balderrama concedes that article 11.072 now applies when a person on community supervision seeks to challenge the validity of the conviction in which the supervision order was imposed or the validity of a condition of supervision. *See id.* § 2(b). Balderrama argues, however, that article 11.072 does not apply here because she is not challenging the validity of her conviction but merely asking for an out-of-time appeal. *See Ex parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000) (holding that habeas corpus application seeking out-of-time appeal did not challenge conviction). The State asserts that Balderrama must necessarily challenge the validity of her conviction—that is, show that the evidence was legally insufficient—in order to prevail on her ineffective assistance of counsel claim.

The State argues that this Court "should not allow applicants to disregard statutory procedures." The State does not, however, identify any statutory procedure that has been disregarded. Balderrama filed her writ application in the district court in which she was convicted, as required by both article 11.072 and article 11.08. Tex. Code Crim. Proc. Ann. art. 11.072, § 2, art. 11.08. As provided in article 11.072 (article 11.08 does not provide detailed procedural guidelines), a copy of the application was served on the State, the State filed its answer, and the

2

district court denied relief in a written order including findings of fact and conclusions of law. *Id*. art. 11.072, §§ 5-7. Under both statutes, Balderrama is entitled to appeal the denial of relief to this Court. *Id*. § 8; *Renier*, 734 S.W.2d at 353. The State concedes that if we were to dismiss this appeal on the ground that Balderrama incorrectly relied on article 11.08, she would be entitled to reapply under article 11.072. It is reasonable to anticipate that the State would then file the same answer, the district court would again deny relief on the basis of the same findings and conclusions, the case would return to this Court on appeal, and the parties would make the same arguments on the merits of Balderrama's claim. In other words, whether Balderrama properly invoked article 11.08 or should have relied instead on article 11.072 is of little consequence—jurisdictional, procedural, or otherwise—under the circumstances of this case.

The district court had jurisdiction to consider Balderrama's writ application, and her appeal is properly before this Court. We decline the State's invitation to dismiss this appeal.

II.

Balderrama contends that the evidence adduced at her trial was legally insufficient to sustain her conviction for theft by a public servant, and that the attorney who represented her on the original appeal to this Court was ineffective for having failed to raise this issue.[1] *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985) (right to effective assistance of counsel on first appeal as of right). To sustain this contention, Balderrama must show that (1) her attorney was objectively unreasonable in failing to discover and raise the issue, and (2) but for this failure, she would have

---

[1] Counsel asserted three points of error, urging that Balderrama's confession was involuntary and that her trial was tainted by references to polygraph examinations.

3

prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Daigle*, 848 S.W.2d at 692. The burden was on Balderrama to prove her claim by a preponderance of the evidence. *Ex parte Peterson*, 117 S.W.3d 804, 818 (Tex. Crim. App. 2003); *Moore v. State*, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985). The district court concluded that the evidence at trial was legally sufficient to support a conviction for theft by a public servant and that appellate counsel rendered reasonably effective assistance. We conduct a de novo review of these conclusions. *Peterson*, 117 S.W.3d at 819. Our review of counsel's performance must be highly deferential, and there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

It is necessary to briefly recount the facts adduced at trial.[2] Balderrama was a civilian employee at the Texas Department of Public Safety (Department) headquarters in Austin. She worked in the security office as a systems support specialist. Her supervisor described her duties as processing applications for security passes and preparing employee identification badges. In her own testimony, she described her work as "maintaining the records, inputting data into the system, making sure that everything stayed up to date." She also helped orient new employees regarding the importance of wearing their identity badges.

The Department regularly receives payments for various fees and deposits. Each morning, the previous day's receipts are placed in locked money bags and collected by a uniformed trooper assigned to the security office for delivery to the state comptroller. On the morning in question, Trooper Bill Maley collected the money bag from the customer service bureau (which deals

---

[2] With the State's agreement, this Court granted Balderrama's motion that it take judicial notice of the record in the original appeal.

with the public in person) and took it to the security office. Maley left the bag on a desk in the office and went about other duties while he waited for the bag from the cash receiving department (which handles the mail orders). Balderrama and two uniformed officers, including the head of security, were in the office when Maley left the bag. About four hours later, after collecting the second money bag, Maley returned to the security office and discovered that the first bag was missing.

Balderrama gave a written statement to investigators admitting her guilt. In the statement, she said that she took the money bag from the desk and hid it in a shredder box. Later, when she had the opportunity, she took the bag to a bathroom, cut it open, and removed the cash. She then threw away the bag and its remaining contents. She used the cash she stole, totaling $9,161, to pay bills. At trial, Balderrama disavowed her statement and denied the theft. She said that she signed the incriminating statement after being threatened with twenty years in prison and the loss of her children, and after being promised that she would be allowed to resign and not be prosecuted if she would sign the statement.

Balderrama's assertion that the State failed to prove a theft by public servant turns on a point of statutory construction. A theft ordinarily punishable as less than a first degree felony is increased to the next higher punishment category if "the actor was a public servant at the time of the offense and the property appropriated came into the actor's custody, possession, or control by virtue of his status as a public servant." Tex. Pen. Code Ann. § 31.03(f)(1). As a government employee, Balderrama was a public servant. *Id*. § 1.07(a)(41)(A). She argues, however, that the stolen money did not come into her possession by virtue of her status as a public servant.

Balderrama relies on opinions construing the statutory predecessors to what is now penal code section 39.02, abuse of official capacity. *Id*. § 39.02 (West 2003). As originally adopted

5

in 1973, this statute provided that a public servant was guilty of official misconduct if, with the intent to obtain a benefit or harm another, he intentionally or knowingly took or misapplied "any thing of value belonging to the government that may have come into his custody or possession by virtue of his employment." Penal Code, 63d Leg., R.S., ch. 399, § 1, sec. 39.01(a)(5), 1973 Tex. Gen. Laws 883, 952 (amended 1983, amended and renumbered 1993). The crime of official misconduct incorporated earlier penal statutes dealing with the misapplication of government property by public officials which included language similar to that quoted above. Balderrama refers us to several opinions applying these earlier penal statutes in which it was held that, to be guilty of misapplication, the public official must have lawfully possessed or controlled the government property in his official capacity before misapplying it to his own use. *See McMorries v. State*, 279 S.W.2d 90, 92 (Tex. Crim. App. 1955) (holding that county judge was not guilty of misapplying school district funds because he was not legally authorized to receive school district money); *Hanna v. State*, 135 S.W.2d 105, 106 (Tex. Crim. App. 1940) (reversing county commissioner's conviction for misapplying county funds because commissioner was not custodian of county funds by virtue of his office); *Reynolds v. State*, 92 S.W.2d 458, 459 (Tex. Crim. App. 1936) (holding that for county officer to be guilty of misapplying county property, he must have been in actual possession thereof at time of its misapplication); *Dickey v. State*, 144 S.W. 271, 274 (Tex. Crim. App. 1912) (reversing city secretary's conviction for misapplying city funds because it was not his official duty to receive or possess city funds).

       In a more recent opinion involving a prosecution for official misconduct under the 1973 version of section 39.01, an assistant school superintendent was shown to have caused four checks to be drawn on the school district's account to pay for the repair and remodeling of his

6

personal residence. *Powell v. State*, 549 S.W.2d 398, 399 (Tex. Crim. App. 1977). Citing evidence that the defendant had been authorized by the school board to approve bills for payment and sign school district checks, the court held that "the custody and control [the defendant] had over disposition of money in the school district's account here in issue was shown to have been by virtue of his employment." *Id*. at 400-01.

Section 39.01 was substantially amended in 1983. Act of May 28, 1983, 68th Leg., R.S., ch. 558, § 7, 1983 Tex. Gen. Laws 3237, 3241-42 (current version at Tex. Pen. Code Ann. § 39.02 (West 2003)). Under the amended statute, it remained a crime for a public servant to misapply government property that came into his possession by virtue of his office or employment. *Id*. § 7, 1983 Tex. Gen. Laws 3237, 3242 (current version at Tex. Pen. Code Ann. § 39.02(a)(2)). At the same time, the theft statute was amended to add subsection (e), which later became present subsection (f)(1). *Id*., § 11, 1983 Tex. Gen. Laws 3237, 3246 (current version at Tex. Pen. Code Ann. § 31.03(f)(1) (West Supp. 2006)). As the court of criminal appeals observed, the 1983 amendment removed the "taking" provision from the official misconduct statute and transferred it to the theft statute, where it was incorporated as an element increasing the punishment range for that offense. *See Talamantez v. State*, 829 S.W.2d 174, 180 n.7 (Tex. Crim. App. 1992).

Subsection (f)(1) does not require that the stolen property belong to the government. Nevertheless, Balderrama argues that under section 31.03(f)(1), as under former section 39.01(a)(5) and the earlier penal statutes referenced above, the stolen property must have come into the actor's possession, custody, or control as a lawful incident of the actor's public office or employment. That is, the actor must have had some authority, by virtue of his status as a public servant, to exercise custody, possession, or control of the property, and the unlawful appropriation must have been an

7

abuse of the public servant's lawful authority over the property. From this premise, she argues that she was not shown to be guilty of theft by a public servant because the State failed to prove that her job at the Department gave her any authority to possess or control the money she stole.

The State advances an alternative interpretation of subsection (f)(1). Under the State's reading, the requirement that "the property appropriated came into the actor's custody, possession, or control by virtue of his status as a public servant" refers to the unlawful appropriation itself. In other words, the State argues that the statute applies whenever the unlawful appropriation is accomplished by virtue of the actor's status as a public servant. This reading of the statute is supported by the opinion in *Garth v. State*, 3 S.W.3d 218 (Tex. App.—Dallas 1999, no pet.). Garth, a police officer, was prosecuted for theft by a public servant after she used her employee fuel card at a police substation to pump twenty-five gallons of gasoline into her personal vehicle. *Id*. at 219-20. She urged on appeal—much as Balderrama does here—that section 31.03(f)(1) requires a "two-stage appropriation." *Id*. at 220. She argued that section 31.03(f)(1) applies "only if a public servant lawfully obtains property and thereafter unlawfully converts it to his own use and benefit." *Id*. The court of appeals disagreed, holding that under section 31.03(a) and (f)(1), the offense of theft by a public servant is established by evidence that (1) the accused unlawfully appropriated property with the requisite intent, (2) the accused was a public servant at the time of the theft, and (3) the property came into the accused's custody, possession, or control by virtue of the accused's status as a public servant. *Id*. The court concluded that the evidence was sufficient because "it is undisputed that [Garth] was a public servant at the time she appropriated the gasoline" and "but for her status as a public servant, [she] would not have been able to use the employee gas card to appropriate the gasoline." *Id*. Similarly, the State argues that Balderrama's status as an employee enabled her to

8

steal the Department's funds, and that she would have been unable to commit the theft but for her status as a public servant.

III.

There was no hearing below, and the district court did not receive testimony from Balderrama's original attorney on appeal. Thus, there is no evidence before us as to why Balderrama's attorney failed to challenge the sufficiency of the evidence to sustain her conviction for theft by a public servant. Under the circumstances, we may conclude that counsel's performance fell below an objective standard of reasonableness only if no reasonable attorney would have failed to raise that issue. *See Andrews*, 159 S.W.3d at 102.

Appellate counsel who files a merits brief need not raise every nonfrivolous claim, but may select from among them in order to maximize the likelihood of success on appeal. *Robbins*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). In *Daigle*, appellate counsel was held to be ineffective because he failed to raise a jury selection error that, under case law then prevailing, was automatic reversible error. 848 S.W.2d at 692. Balderrama's claim that her appellate attorney was ineffective is not nearly so well founded.

Balderrama argues that any reasonably competent attorney would have recognized that in order to convict her of theft by a public servant, the State was required to prove that she was authorized, by virtue of her status as a public servant, to exercise custody, possession, or control over the stolen money. As we have discussed above, however, Balderrama's argument rests on case law construing former official misconduct statutes and not section 31.03(f)(1). In light of the *Garth* opinion, which was announced before Balderrama's trial, a reasonably competent attorney could

9

conclude that the case law on which Balderrama relies does not govern a prosecution for theft by a public servant, and that the evidence adduced by the State at Balderrama's trial was sufficient to sustain a conviction for theft by a public servant.[3] Indeed, a reasonably competent attorney could conclude that under the facts of this case, Balderrama, by virtue of her employment in the security office, exercised a degree of care or control over the stolen property sufficient to satisfy even her reading of section 31.03(f)(1). Given the indefinite state of the law and the evidence, we are not persuaded that counsel's failure to raise the legal sufficiency issue was so obviously wrong as to render his performance ineffective.

The district court's order is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: December 5, 2006

Publish

_____

[3] We note that Balderrama's trial counsel also did not perceive this to be an issue. Trial counsel did not request a jury instruction on the lesser included offense of simple theft, nor did he argue to the jury that the State had failed to prove the aggravating elements in subsection (f)(1).

10