TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00659-CR






Quentin Paul Freeman, Sr., Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT

NO. 11,081, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 A jury found Quentin Paul Freeman, Sr., guilty of arson of a habitation, a first-degree
felony, and assessed a punishment of seventy-five years' imprisonment. See Tex. Penal Code Ann.
§ 28.02(a)(2), (d)(2) (West Supp. 2008). In three issues, Freeman complains that he was put to trial
after having been found incompetent, violating his due process rights; that the trial court's sua sponte
substitution of his counsel without good cause violated his right to counsel; and that he received
ineffective assistance of counsel. In response to the State's assertion that Freeman was found to have
regained competency before the case proceeded to trial, this Court abated the cause and instructed
the trial court to forward a pre-trial competency determination. (1) After a hearing, such determination
was made and filed in this Court on April 15, 2008. Having reinstated Freeman's appeal, we will
affirm the judgment of conviction.


BACKGROUND

 On March 16, 2004, Freeman was indicted for arson of a habitation. (2) His first
appointed counsel filed a motion for Freeman to undergo a psychiatric evaluation to determine
whether he was competent to stand trial, which the court granted on May 26, 2004. Thereafter,
Freeman's attorney commenced pre-trial discovery and filed a notice of intention to offer evidence
of insanity. The first psychiatric evaluation of Freeman was conducted August 11, 2004, by court-appointed psychiatrist Dr. Susan Stone, who noted that Freeman appeared to experience auditory
hallucinations and paranoid ideation, suggesting that he suffered from chronic paranoid
schizophrenia. She concluded that while Freeman had "a fair understanding of court processes and
the charges against him," he did not possess a present ability to consult with counsel and assist in
his own defense; therefore, in her opinion, Freeman was not competent to stand trial.

 On August 31, 2004, the trial court signed an Agreed Judgment of Incompetency and
Commitment for Treatment, based on Dr. Stone's findings. Freeman was committed to the
North Texas State Hospital for a period not to exceed 120 days and ordered to undergo further
psychiatric examination.

 On December 29, 2004, the chief psychiatrist at the hospital wrote to the trial court,
stating that Freeman was competent to stand trial. He attached a report conducted by the hospital's
chief psychologist finding that Freeman had engaged "in a considered strategy of feigning and/or
exaggerating symptoms" in an effort "to raise questions concerning his trial competency." On
January 25, 2005, the trial court signed a second order requiring Freeman to submit to another
psychiatric evaluation, which was again conducted by Dr. Stone. After acknowledging the hospital
staff's findings that Freeman had been feigning incompetency, Stone described her second interview
with Freeman, during which he was uncooperative and offered only "nonsensical responses [that]
are not, in any way, consistent with any form of mental illness." While reaffirming her original
opinion that Freeman might suffer from mental illness (specifically, bipolar disorder with psychotic
features), Dr. Stone agreed with the hospital's conclusion that Freeman was competent to stand trial. 
 The record next reflects that a competency hearing was scheduled for April 12, 2005,
although the trial court's docket sheet contains a notation that Freeman "refused to show up." The
docket sheet further indicates that, as of the date of the competency hearing, Freeman was still being
represented by his original appointed counsel. The same day, the trial court signed an order
appointing Freeman new counsel; that order bears the judge's handwritten notation, "Defendant not
present in courtroom."

 The case proceeded to trial on August 1, 2005. The State produced evidence that in
January 2004, Freeman intentionally set fire to the residence of Jimmie Lee Hill. The jury found
Freeman guilty of arson of a habitation and sentenced him to seventy-five years' imprisonment. The
trial court certified Freeman's right to appeal, and this appeal followed.

 When the record was filed in this Court, it contained no indication that a
determination of competency was made before the trial commenced. (3) Therefore, we abated the cause
and instructed the trial court to forward a pre-trial competency determination. (4) On April 9, 2008,
the trial court conducted a hearing at which it took judicial notice of the trial itself and admitted into
evidence the documents concerning Freeman's competency that had been misfiled in the other
pending case against him. At the conclusion of the hearing, the trial court found that it had made a
pre-trial determination that Freeman was competent. A record of the proceeding was forwarded to
this Court, and Freeman's appeal was reinstated.


DISCUSSION

 In his first issue, Freeman contends that he was denied due process when he was
brought to trial without first having been found competent to stand trial. However, based on the
supplemental record filed in this Court, it is clear that the trial court had determined that Freeman
was competent before proceeding to trial, and we conclude that this argument is without merit. 
Freeman's first point of error is overruled.

 In his second issue, Freeman asserts that the trial court's sua sponte substitution of
his appointed counsel without his consent violated his right to counsel. A criminal defendant's right
to counsel is guaranteed by both the federal and state constitutions. See U.S. Const. amend. VI;
Tex. Const. art. I, § 10. This right contemplates a defendant's right to obtain assistance from counsel
of the defendant's choosing. Gonzalez v. State, 117 S.W.3d 831, 836-37 (Tex. Crim. App. 2003). 
"It is well-established that when counsel appears on behalf of a criminal defendant as attorney of
record, that lawyer, whether appointed or retained, is obligated to represent the client until the trial
court actually grants a motion to withdraw or a motion to substitute counsel." Bryant v. State,
75 S.W.3d 628, 631 (Tex. App.--Fort Worth 2002, pet. ref'd). The trial court's power to appoint
counsel to represent an indigent defendant does not include the concurrent power to remove counsel
at the trial court's "discretionary whim." Stearnes v. Clinton, 780 S.W.2d 216, 222-23 (Tex. Crim.
App. 1989); see also Tex. Code Crim. Proc. Ann. art. 26.04(j)(2) (West Supp. 2008) (appointed
attorney shall continue representation until replaced by other counsel after "finding of good
cause is entered").

 A trial court's actions will rise to an unconstitutional level if the court unreasonably
or arbitrarily interferes with a defendant's right to choose counsel. Gonzalez, 117 S.W.3d at 837. 
Therefore, to replace a court-appointed attorney during trial, the trial court must have some
principled reason to justify the replacement of appointed counsel. Buntion v. Harmon, 827 S.W.2d
945, 949 (Tex. Crim. App. 1992) (orig. proceeding). While an indigent defendant does not have the
right to the appointment of a particular attorney, Malcom v. State, 628 S.W.2d 790, 791 (Tex. Crim.
App. 1982), it is clear that "once an attorney is serving under a valid appointment by the court and
an attorney-client relationship has been established, the court may not arbitrarily remove the attorney
over the objections of both the defendant and his counsel." Stearnes, 780 S.W.2d at 221 (quoting
Harling v. United States, 387 A.2d 1101, 1102 (D.C. Cir. 1978)). 

 The State urges in response that neither Freeman, his original appointed counsel,
nor his substituted appointed counsel objected to the trial court's substitution of counsel on
April 12, 2005. While Freeman could not have objected at the time the substitution was made
because the trial court's docket sheet--our only record related to that hearing--indicates that he was
not present, Freeman did not subsequently object at trial, where he was present throughout the
proceedings. Nor did Freeman challenge the trial court's substitution of his counsel by writ of
mandamus. See Buntion, 827 S.W.2d at 946 (writ of mandamus to prevent attorney's removal from
case is "normal vehicle" for seeking relief); see also Stotts v. Wisser, 894 S.W.2d 366, 367
(Tex. Crim. App. 1995); Stearnes, 780 S.W.2d at 217.

 Even assuming that Freeman did not waive error by failing to object to the
substitution of counsel prior to this appeal, it is clear that any error was waived by Freeman agreeing
to and accepting new counsel. See Springer v. State, 940 S.W.2d 322, 323-24 (Tex. App.--Dallas
1997, no pet.); Emerson v. State, 756 S.W.2d 364, 369 (Tex. App.--Houston [14th Dist.] 1988,
pet. ref'd). If a defendant is displeased with his appointed counsel at any stage of the proceeding,
he must bring the matter to the court's attention. Springer, 904 S.W.2d at 323. Although the record
does not affirmatively show that Freeman agreed to the substitution of his counsel, neither does the
record show that he objected to it, having raised the issue for the first time before this Court.

 In the interests of justice, we further note that any error in the trial court's sua sponte
substitution of counsel was harmless. See Brown v. State, 182 S.W.3d 427, 430
(Tex. App.--Texarkana 2005, no pet.) (where there is no "total deprivation of the right to counsel,"
error is not structural and is subject to harmless-error analysis) (quoting Mendez v. State,
138 S.W.3d 334, 340 (Tex. Crim. App. 2004)). When a constitutional error has occurred and is
subject to harm analysis, the Texas Rules of Appellate Procedure require us to reverse the trial
court's judgment "unless the court determines beyond a reasonable doubt that the error did not
contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). Nothing in the record before
us suggests Freeman was displeased with his substituted counsel's performance or had any valid
reason to be displeased with that performance. (5) Accordingly, we conclude, beyond a reasonable
doubt, that even if the trial court had erred in substituting counsel, such error did not contribute to
Freeman's conviction or punishment. Freeman's second issue is overruled.

 In his third issue, Freeman argues that he was denied the effective assistance of
counsel because his counsel did not conduct an adequate pretrial investigation of Freeman's mental
health history. To establish ineffective assistance of counsel, Freeman must show that his attorney
made such serious errors that he was not functioning effectively as counsel and that these errors
prejudiced Freeman's defense to such a degree that he was deprived of a fair trial. See
Strickland v. Washington, 466 U.S. 668, 687 (1984); Hernandez v. State, 988 S.W.2d 770, 771-72
(Tex. Crim. App. 1999). To prove prejudice, Freeman must show that there is a reasonable
probability that the result of his trial would have been different had counsel not performed
deficiently. Strickland, 466 U.S. at 693-94. Our review of counsel's performance must be highly
deferential, and there is a strong presumption that counsel's conduct fell within the wide range of
reasonable professional assistance. Andrews v. State, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005);
Ex parte Balderrama, 214 S.W.3d 530, 533 (Tex. App.--Austin 2006, pet. ref'd). To overcome this
presumption, any allegation of ineffectiveness must be firmly founded in the record and the record
must affirmatively demonstrate the alleged ineffectiveness. Mallett v. State, 65 S.W.3d 59, 63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

 As evidence of counsel's ineffectiveness, Freeman points only to the fact that the trial
court twice ordered Freeman to submit to a psychiatric examination, but suggests that "neither of
these examinations was ever performed." We disagree. The first order Freeman refers to, the
Agreed Judgment of Incompetency and Commitment for Treatment dated August 31, 2004, was
followed by Freeman's commitment to the state hospital and examination by hospital staff. This
report concluded that Freeman had been feigning incompetence in order to avoid standing trial, but
that he was in fact competent. Freeman also asserts that the January 25, 2005 order directing
Freeman to submit to another examination by Dr. Stone, the court-appointed psychiatrist, was not
complied with, but the record indicates otherwise. This examination was conducted on
February 8, 2005. As Stone reported, Freeman's "nonsensical responses" during that examination
were "not, in any way, consistent with any form of mental illness," leading Stone to conclude that
Freeman did not meet the criteria for the insanity defense under the Texas Penal Code and that he
was competent to stand trial. In light of the evidence that Freeman was indeed competent, as well
as our disposition of Freeman's first issue, we do not agree that Freeman's counsel was ineffective
for his failure to further investigate Freeman's mental health history. Freeman has not met his
burden in showing that his counsel was ineffective, and his third issue is overruled.


CONCLUSION

 Because we hold that the trial court properly determined that Freeman was competent
to stand trial before proceedings against him commenced, that any error in the trial court's sua sponte
substitution of counsel was harmless, and that Freeman did not receive ineffective assistance of
counsel, we affirm the judgment of conviction.


___________________________________________

 Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: September 19, 2008

Do Not Publish
1. A competency finding made by a trial court after a previous incompetency finding can be
affirmed only if the record contains a judgment, order, docket sheet entry, or other evidence
demonstrating that the trial court made a determination of competency after the appellant's return
from a state hospital. Schaffer v. State, 583 S.W.2d 627, 630 (Tex. Crim. App. 1979) (op. on reh'g). 
If this evidence is lacking in the record, the proper remedy is to abate the appeal and remand the
cause to the trial court for a competency determination. See id.
2. Additional counts of arson of a vehicle and burglary of a habitation with intent to commit
theft were included in the indictment, but these counts were subsequently severed. This appeal
concerns only Freeman's conviction for arson of a habitation.
3. According to the State, copies of the documents relating to Freeman's competency were
not filed with the trial court in this case because they were accidentally filed in duplicate in another
pending case against Freeman. Regardless, letters from a psychiatrist or psychiatric evaluations
containing recitations of competency are evidentiary only; they cannot operate as a substitute for a
judicial determination of a defendant's competency to stand trial. Bell v. State, 814 S.W.2d 229, 232
(Tex. App.--Houston [1st Dist.] 1991, pet. ref'd). Instead, the record must contain a judgment,
order, docket entry, or other evidence that the trial court actually made a determination of
competency, see Schaffer, 583 S.W.2d at 631, and as the State conceded on appeal, the original
record in this case contained no such determination.
4. In the order, we included a time frame within which the parties could elect to supplement
their original briefing in light of the trial court's determinations. No supplemental briefs were filed.
5. The evidence of Freeman's guilt was overwhelming, including testimony from two
witnesses who stated that, on the day before the fire, Freeman told them that he planned to burn
down Hill's house; from the arson investigators, who testified that Freeman's clothes contained
traces of gasoline, the same accelerant used in committing the offense; and from Hill herself, who
was among several witnesses to testify that Freeman had made threats against her and had set fire
to her truck days before the arson of her home. Freeman's substituted counsel effectively cross-examined each of the witnesses in an effort to show that witnesses were biased against Freeman and
that Freeman could reasonably have had gasoline on his clothes due to his job working in a vehicle
scrap yard. However, the jury, by its verdict, chose not to believe Freeman's theory of the events. 
See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (jury is exclusive judge of
credibility of witnesses and weight to be accorded their testimony).