Affirmed and Memorandum Opinion filed April 21, 2009








Affirmed and Memorandum Opinion filed April 21, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-09-00102-CR

NO. 14-09-00103-CR

____________

 

EX PARTE LINDA COX AND ORVILLE IRA
COX

 

 

 



 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause Nos. 766575-A
& 766576-A

 



 

M E M O R A N D U M   O P I N I O N








In October 1997, Linda and Orville Cox were charged with
engaging in organized criminal activity.  They pleaded not guilty before the
court, which found them guilty of the lesser offense of theft and assessed
punishment at community supervision for ten years.  Appellants= retained attorney
filed an appeal challenging the legal sufficiency of the evidence to support
the convictions.  This court affirmed the convictions.  Cox v. State, 93
S.W.3d 165 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d).  On December
11, 2008, appellants filed applications for writs of habeas corpus in the trial
court asserting that they are entitled to an out-of-time appeal because the
attorney they retained to represent them in the original appeal rendered
ineffective assistance of counsel by failing to raise particular issues on
appeal.  Appellants= claims on appeal arise from the trial
court=s denial of their
request for an out-of-time appeal.  We affirm.

Background

Appellants, husband and wife, operated three crafts stores
under the name of ALinda=s Emporium.@  Pursuant to a
written License and Use Agreement, local craftsmen, the complainants, licensed
booths within appellants= stores and provided the appellants= inventory.  The
License Agreement provides that the inventory continued to be owned by the
craftsmen.  Appellants were required to remit the proceeds from sales of the
crafts to the craftsmen, less a commission and a monthly license fee.  An
appendix to the agreement provided that appellants closed their books for
accounting purposes on the 25th of each month.  According to the agreement,
checks for sales occurring prior to the 25th day of each month were to be
mailed to the crafters Aon or about the first.... Minor variances
by a very few days may occur periodically, due to holidays and other
unavoidable occurrences.@

Appellants began to experience financial difficulties
between Thanksgiving and Christmas of 1996.  They shuffled money among several
banks, withdrew large sums of money in cash, ceased to timely mail crafters
their checks, removed and destroyed their business records, and moved out of
their home.  Appellants paid their landlords $60,000 to keep the doors to their
stores open during December, the most profitable month of the year for craft
sales.  Appellants encouraged the crafters to keep their booths fully stocked. 
Orville Cox directed employees to prepare the crafters= checks for the
month of December, but instructed them not to mail the checks.  Fewer than 100
December payment checks were distributed; it was unclear how many were returned
for insufficient funds.  Some crafters testified that they received December
payment checks, but the checks were returned for insufficient funds.








Orville=s assistant testified that she drove to
the business office of Linda=s Emporium at approximately 9:00 p.m. on
January 2, 1997.  Appellants were in the business office packing the business
records.  When Orville=s assistant asked if she should come to
work the next morning, Orville told her to come to work, but to keep the doors
on the filing cabinets closed.  The next morning, January 3, 1997, appellants
did not open the business office or the Pasadena store.  By 1:00 p.m., all
three craft stores were closed.  During the first few days of January, a number
of the crafters removed their merchandise from the stores because they heard
appellants were removing business records.  By January 5, 1997, appellants= business accounts
were virtually empty; as of that date, appellants owed approximately $350,000
to crafters.  Records of sales at appellants= stores eventually
were discovered in the garbage. 

Paula Solomon lived across the street from appellants and
was employed by them to clean their home and business office.  In December
1996, Solomon noticed that business records were being removed from the
office.  During that month, while cleaning appellants= home, Linda Cox
asked Solomon to help her carry boxes of business records into appellants= home.  Later,
Solomon noticed a paper shredder in appellants= home.  At
approximately 11:00 a.m. on January 3, 1997, Solomon was cleaning appellants= home when someone
knocked on the door.  Linda told Solomon not to answer the door because the
store was closing and she expected crafters to come to the house.  That night
appellants moved out of their home and left in a motor home.  

After a trial to the bench, appellants were convicted and
given a ten‑year probated sentence.  One condition of community supervision
required that appellants pay $143,887.38 to the crafters.  Appellants appealed
their convictions to this court on the ground that the evidence was
insufficient to sustain a conviction for felony theft.  Cox v. State, 93
S.W.3d at 166. This court found the evidence was legally sufficient to enable a
rational jury to conclude the complainants, not appellants, had the greater
right to possession of the proceeds of the craft sales during a time period
identified in the indictment.  Id. at 168.  








Appellants now claim their appellate attorney rendered
ineffective assistance of counsel by failing to raise certain issues.  The
trial court found that appellants= attorney rendered
reasonably effective assistance and denied appellants= applications for
writ of habeas corpus.  In a single issue, appellants claim the trial court
abused its discretion in denying the writ.

The Record on Appeal

The State argues that appellants are not entitled to an
out-of-time appeal because they failed to produce the record from their first
trial to the trial court.  The State argues that because the trial court did
not have the benefit of the appellate record, this court may not review it. 
The cases relied on by the State, however, do not address this unique situation
in which appellants complain of ineffective assistance of counsel on appeal.  See
Ex parte Dixon, 964 S.W.2d 719, 722 (Tex. App.CFort Worth 1998,
pet. ref=d) (writ of habeas
corpus alleging double jeopardy); Goss v. State, 944 S.W.2d 748, 750
(Tex. App.CCorpus Christi 1997, no pet.) (same); Roberson v.
State, No. 14-98-00373-CR, 1999 WL 111168 (Tex. App.CHouston [14th
Dist.] March 4, 1999, no pet.) (not designated for publication) (writ of habeas
corpus alleging violations of due process and equal protection).

Although, as the State argues, it is improper for an
appellate court to look to another appellate record to supply deficiency in
proof of another case, an appellate court may take judicial notice of its own
records in the same or related proceeding involving the same or nearly the same
parties.  Turner v. State, 733 S.W.2d 218, 221B22 (Tex. Crim.
App. 1987); Goodson v. State, 221 S.W.3d 303, 304 (Tex. App.CFort Worth 2007,
no pet.).  Because appellants= appeal was originally filed in this
court, we take judicial notice of the record and the briefs filed in cause
numbers 14-99-00293-CR and 14-99-00294-CR.

 

 








Ineffective Assistance of Counsel

Appellants contend their appellate attorney failed to raise
critical issues that would have resulted in reversal of their convictions. 
Specifically, appellants contend their attorney failed to assert that (1) the
failure to comply with contractual obligations does not constitute theft by
deception, (2) there is no evidence that appellants intended to deprive the
crafters of the proceeds at the time the merchandise was sold, and (3) there
was a material variance between the indictment and the evidence at trial.  

The proper standard for evaluating appellants= claim that
appellate counsel was ineffective is enunciated in Strickland v. Washington,
466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  See Smith v. Robbins,
528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).  To sustain
appellants= contentions, they must show that (1) their attorney
was objectively unreasonable in failing to discover and raise the issues, and
(2) but for that failure, they would have prevailed on appeal.  Smith,
466 U.S. at 285; Ex parte Balderrama, 214 S.W.3d 530, 533 (Tex. App.CAustin 2006, pet.
ref=d).  The burden
was on appellants to prove their claim by a preponderance of the evidence.  See
Ex parte Peterson, 117 S.W.3d 804, 818 (Tex. Crim. App. 2003).  

The
trial court filed written findings of fact and conclusions of law.  In
conducting our review, we accord great deference to the trial court=s findings and conclusions.  Ex
parte Amezquita, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006).  The trial court
concluded that appellants= attorney raised the legal sufficiency of
the evidence on appeal, and that his failure to raise a different variant of
the legal sufficiency issue was not so obviously wrong as to render his
performance ineffective.  There is a strong presumption that counsel=s conduct fell
within the wide range of reasonable professional assistance, thus our review of
counsel=s performance must
be highly deferential.  See Andrews v. State, 159 S.W.3d 98, 101 (Tex.
Crim. App. 2005). 








A.      Legal
Sufficiency of the Evidence

In appellants= first contention,
they assert appellate counsel rendered ineffective assistance by failing to
argue that the evidence was legally insufficient to sustain the convictions
because the failure to comply with contractual obligations does not constitute
theft by deception.  In their second contention, appellants assert that
appellate counsel rendered ineffective assistance by failing to argue the legal
sufficiency of the evidence to support their intent to deprive the crafters of
the proceeds when the merchandise was sold.  Appellants assert that A[h]ad appellate
counsel raised the issue that the evidence was insufficient to establish that
appellants intended to deprive the crafters of the proceeds when the
merchandise was sold, this Court would have been obligated to reverse the
convictions and enter judgments of acquittal.@  

In reviewing the issues appellants claim their attorney
should have raised, we conclude they were not prejudiced.  Appellants first
argue there is no evidence of theft by deception.  When a defendant receives
money voluntarily pursuant to a contract, and thereafter fails to perform, the
State must prove that the owner=s consent for the defendant to obtain the
money was ineffective due to deception.  See Phillips v. State, 640
S.W.2d 293, 294 (Tex. Crim. App. 1982).  Second, appellants argue that the
failure to pay the crafters pursuant to the terms of the contracts did not
establish intent to commit theft at the time the merchandise was sold. 

In considering these challenges, we view the evidence in
the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007).  The record reveals the following evidence of deception and intent
to commit theft at the time the goods were sold:

$                  
Appellants
encouraged the crafters to keep their booths fully stocked.








$                  
Appellants
paid the landlords to keep the stores open during December despite their
financial troubles.

$                  
Appellants
instructed their employees to write the crafters= checks for
December, but not to distribute them.

$                  
Appellants
removed business records from the offices.

$                  
Appellants
instructed a manager to open the store, but to keep the empty file cabinets
closed.

In support of their claim that the evidence was
insufficient to show an intent to deprive the crafters of money at the time the
merchandise was sold, appellants cite Wilson v. State, 663 S.W.2d 834
(Tex. Crim. App. 1984), and Roper v. State, 917 S.W.2d 128 (Tex. App.CFort Worth 1996,
pet. ref=d).  In Wilson,
the appellant was the manager of a corporation that purchased grain from the
complainant.  Wilson, 663 S.W.2d at 836.  The corporation failed to pay
for the grain and the State filed theft charges against its manager.  Id. 
The State argued that the appellant had created a corporation Afor the purpose of
allowing the Appellant to conduct business while avoiding both present and
prior debts and judgments.@  Id.  The State argued that by
creating the corporation for such a purpose, the evidence was sufficient to
show intent to deprive the owner of property.  Id.  The court of
criminal appeals held that because the corporation was formed in 1972, seven
years before the complainant purchased the grain, the State failed to sustain
its burden of proof to show that at the time the corporation was formed, the
appellant had the requisite intent to deprive the owner of property.  Id.
at 837.








In Roper, the court also found the State did not
meet its burden to show intent to deprive the owner of property.  In that case,
Roper worked as a tractor driver on a farm owned by Terrell.  Roper, 917
S.W.2d at 130.  Terrell gave Roper permission to sell some of the hay from the
farm.  Id. at 130B31.  Terrell permitted Roper to sell the
hay for $16.00 per bale, and permitted Roper to keep $1.00 per bale as
commission.  Id. at 131. Terrell would accept payment only in cash.  Roper
testified that Terrell agreed to permit Roper to retain some of the money for
wages owed by Terrell.  Roper sold some of the hay to a man who paid by check
for $1,600 made out to Roper.  Roper deposited the check, and after a few
weeks, moved to another town because he started a new job.  Roper never paid
Terrell cash for the hay because he thought he had permission to keep the money
until Terrell asked for the extra money.  Id.  The State=s theory at trial
was that Roper committed theft because he had the check made out in his name
instead of Terrell=s.  The court of appeals held that the
case presented a civil contract dispute where the terms of the contract were
unclear.  Id. at 132.  The court found that theft convictions resulting
from otherwise civil contractual disputes may warrant reversal for insufficient
evidence where there is no evidence supporting the requisite criminal intent.  Id.


This case is distinguishable from Wilson and Roper
because there is evidence supporting the requisite criminal intent.  The
contract between Roper and Terrell described a consignment arrangement similar
to that between appellants and the crafters.  However, the terms of the License
and Use Agreement in this case were clear in describing what was expected of
each party to the contract.  Further, there is evidence in this case of
appellants= intent to deprive the crafters of their property in
that appellants encouraged crafters to stock their booths during the same month
they removed business records, intentionally withheld payment, and closed the
stores without notice to the crafters.[1] 
Viewing the evidence in the light most favorable to the verdict, we conclude a
rational trier of fact reasonably could have concluded that appellants engaged
in deception, and intended to commit theft at the time the merchandise was
sold.  Therefore, appellants were not prejudiced by counsel=s alleged failure
to raise those issues.








B.      Material Variance Between
the Allegation of Theft and Evidence that Appellants Misapplied Fiduciary
Property

Appellants argue that counsel was ineffective for failing
to raise a material variance between the indictment and the proof at trial. 
Appellants were indicted for engaging in organized criminal activity.  The
trial court found them guilty of the lesser-included offense of theft. 
Appellants allege that if they committed a crime, it was misapplication of
fiduciary property, not theft.

A person commits the offense of theft if he unlawfully
appropriates property with intent to deprive the owner of the property.  Tex. Penal Code Ann. ' 31.03 (Vernon
Supp. 2008).  A person commits the offense of misapplication of fiduciary
property if he intentionally, knowingly, or recklessly misapplies property he
holds as a fiduciary in a manner that involves substantial risk of loss to the
owner of the property or to a person for whose benefit the property is held.  Tex. Penal Code Ann. ' 32.45 (Vernon
Supp. 2008).

The court of criminal appeals has reversed convictions
under general statutes when the prohibited conduct was covered by a more
specific statute.  See Jones v. State, 552 S.W.2d 836 (Tex. Crim. App.
1977); Ex Parte Pribble, 548 S.W.2d 54 (Tex. Crim. App. 1977); Ex
Parte Harrell, 542 S.W.2d 169 (Tex. Crim. App. 1976).  However, these cases
involved a conviction under a general statute, which provided for a felony
punishment, while a special statute provided for a misdemeanor offense.  The
specific statute controls when sections of the penal code cannot be
harmonized.  Billings v. State, 725 S.W.2d 757, 760 (Tex. App.CHouston [14th
Dist.] 1987, no pet.). An offender should not be made to bear a harsher penalty
when the same conduct would otherwise carry a lesser punishment.  Boyette v.
State, 632 S.W.2d 915, 919 (Tex. App.CHouston [14th
Dist.] 1982, pet. ref=d).  That a general and a more specific statute
might be viewed as proscribing the same conduct does not, standing alone,
compel a conclusion that the Legislature intended prosecution of the conduct to
be exclusively under the more specific statute.  Lomax v. State, 233
S.W.3d 302, 309 (Tex. Crim. App. 2007).  








In this case, both the general statuteCtheftCand the special
statuteCmisapplication of
fiduciary propertyCcarry the same punishment range depending
upon the value of the property misappropriated.  Compare Tex. Penal Code Ann. ' 31.03 and ' 32.45. 
Therefore, prosecution under either statute subjects the offender to the same
range of punishment.  If any error existed in the prosecution and conviction of
appellant under the general theft statute, it was harmless and would not
warrant a reversal.  See Boyette, 632 S.W.2d at 920.  Therefore, counsel
was not ineffective for failing to raise the potential variance.  The trial
court did not abuse its discretion in denying appellants= out of time
appeal.  Appellants= sole issue is overruled.

The judgment of the trial court is affirmed.

 

 

 

 

 

/s/      William J. Boyce

Justice

 

 

 

 

Panel consists of
Justices Anderson, Guzman, and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  Appellants=
encouragement of the crafters to stock their booths was evidence of their
intent to increase December sales without warning the crafters that the stores
would close.