Robert G. WILSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 68048.

Court of Criminal Appeals of Texas, En Banc.

Feb. 1, 1984.

Paul E. Gartner, Jr., Waco, for appellant.

Thomas B. Sehon, Dist. Atty., Marlin, Stephen B. Edwards, Asst. Atty. Gen., Austin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for theft of property over the value of $10,000.00. After the jury found appellant guilty, the court assessed punishment at five years.

On August 17, 1979, Werner Fuchs, president of Westphalia Fertilizer and Grain in Lott, contacted appellant, manager of Transco Corporation in Plainview, and offered to sell 800,000 pounds of milo grain. This sale was completed on August 28, 1979, and on August 29, Fuchs drew a draft on the Transco account in the amount of $37,164.46. When this draft was not honored, Transco on September 15, 1979, sent a check to Westphalia Fertilizer and Grain for the same amount; this check also was returned for insufficient funds.

From August 28 to September 2, 1979, Fuchs sold an additional 1,085,040 pounds of milo grain to Transco Corporation. On September 4, he drew a draft on the Transco account in the amount of $49,165.28. This draft and a Transco check for the same amount dated September 18, 1979, were both returned for insufficient funds.

Finally, Fuchs sold 759,330 pounds of milo to Transco Corporation between September 5 and September 7, 1979. A draft was drawn on the Transco account in the amount of $33,029.52 on September 10, 1979; no funds, however, were ever deposited in the Westphalia Fertilizer and Grain account as a result of that draft.

When asked whether appellant had made any offer to return the grain, Fuchs testified: "He made the remark that the grain was sold and he got the money and said he didn't know what happened with it ..." Records of Producers Grain Corporation in Amarillo, State's Exhibits Nos. 17 through 21, indicate Transco Corporation sold grain worth $126,711.18 to Producers Grain from August 23 to August 29, 1979. Darrell Johnson, assistant manager of Producers Grain Port and Terminal in Corpus Christi, testified $46,111.25 of that $126,711.18 was for milo grain Transco originally had purchased from Westphalia Fertilizer and Grain.

Fuchs further testified:

"I informed [appellant] ... that without the grain being paid for, I would just have to move in with him with my family over the winter in order to make it, because we have no money, and we had to borrow to pay the farmers. And he informed me, 'I will see what I can do' ...

"...

"Several days later he called me and told me he was sending $9,000.00. He said, 'That will help some.' And this is all he mentioned."

Transco Corporation then sent a cashier's check dated October 26, 1979, to Westphalia Fertilizer and Grain "with no statement whatsoever of what it was for or what it represented."

State's witness Rose Ann Brumley, Transco's office manager and bookkeeper at the time in question, testified "between twelve and fifteen hundred" checks, for a total amount of approximately $5 million, were signed for Transco Corporation in August 1979. She further related, "The book bank balance was impossible to determine at any particular day;" "maybe, perhaps, fifty thousand dollars of checks would not be in and yet we would have a forty thousand balance." She estimated the corporation's

books were behind "four to six weeks" during that period.

Defense witness Cindy Harper, a certified public accountant and appellant's daughter, testified she arrived in Plainview "around September the 22nd," 1979, and discovered that "the bank statements hadn't been reconciled for several months;" neither was there "a detailed list anywhere of total amount that was outstanding that had not been paid" nor "total amount outstanding that had not been collected." She further related, "the records were so far behind there was no way of telling whether the company was in great shape or terrible shape." Not until October 1979 was it evident Transco Corporation was in financial trouble.

The indictment alleges appellant, "on or about the 29th day of August A.D. 1979, ... with the intent to deprive the owner, Werner Fuchs, of property, namely, milo grain, did knowingly and intentionally, without the owner's effective consent, unlawfully appropriate such property which had a value of more than ten thousand dollars ($10,000.00) ... " Appellant contends the evidence is insufficient to sustain his conviction.

Sec. 31.03, V.T.C.A. Penal Code, provides in part:

"(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

"(b) Appropriation of property is unlawful if:

"(1) it is without the owner's effective consent;"

Further, Sec. 31.01, supra, states:

"(4) 'Effective consent' includes consent by a person legally authorized to act for the owner. Consent is not effective if:

"(A) induced by deception or coercion;"

Sec. 31.03, supra, additionally provides:

"(2) 'Deception' means:

"(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

"(B) failing to correct a false impression of law or fact ...

"(C) preventing another from acquiring information ...

"(D) selling or otherwise transferring or encumbering property without disclosing ...

"(E) promising performance that is likely to affect the judgment of another in the transaction and the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue, without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed."

Milo grain over the value of $10,000.00 was the property allegedly stolen. Because it was voluntarily sold to Transco Corporation through appellant as the corporation's manager, the State necessarily was proceeding on the theory consent was ineffective due to deception. The State maintains that the theft of the grain from Fuchs "was not a 'debt' or 'bad business practice' but a transaction between Fuchs and a 'sham' Transco Corporation which was in reality a one-man operation controlled by the Appellant."

Norman Arnett, an attorney who had represented one of the creditors at appellant's bankruptcy hearing in February 1980, testified appellant at that hearing stated he had organized Transco Corporation "so the Internal Revenue Service would not be able to get to his personal assets." Robert Wilson, another attorney present at appellant's bankruptcy hearing, likewise testified appellant stated he organized Transco "to avoid his creditors." Thus, the State argues, "Transco's creation and corporate structure was designed solely for the purpose of allowing the Appellant to conduct business while avoiding both present and prior debts and judgments," which, the State maintains, proves appellant's "intent to deprive the owner of property."

■ Relevant intent to deprive the owner of property is the accused's intent at the

time of the taking. *Peterson v. State,* 645 S.W.2d 807 (Tex.Cr.App.1983). State's Exhibit No. 29, the articles of incorporation of Transco Corporation, indicates Transco was organized in December 1972. In addition, Fuchs testified as follows regarding prior business transactions between Westphalia Fertilizer and Grain and Transco Corporation:

"Q. [prosecutor] ... how many times in the past have you dealt with Transco Corporation?

"A. We have sold Transco grain from 1974 to 1979.

"Q. All right, sir.

"A. A period of about six years.

"Q. At any time prior to 1979 did you ever have any trouble in collecting money from Transco Corporation?

"A. No, I did not.

"Q. Do you know how many occasions in the past you had done business with Transco Corporation over the six year period of time?

"A. During the grain season, approximately six times.

"Q. About once a year?

"A. During the grain season, which is usually in July, August and September. Last year, due to the wet year, we had August and September for most of our grain.

"Q. But prior to 1979 any time you needed money from them for grain you had sold them, you got it, is that correct?

"A. That is correct.

" . . .

"Q. In the past when you sold grain to Transco Corporation out of Plainview, who did you deal with? Who were you in contact with?

"A. I have dealt with only one person. That was Robert Wilson [appellant] ..."

Fuchs further related the following:

"Q. [prosecutor] Had you had any earlier dealings in 1979 with Transco for which you were paid by Transco?

"A. Yes, I did.

"Q. When was that?

" . . .

"A. On August the 9th. On August the 9th I sold five loads to Transco. This was no pounds; just five truck loads. And they were completed, or filled. That was the beginning of the grain season and the five loads went out—I mean the fifth load went out on August 20th. We drew a draft for the five loads on Transco at the City National Bank in Plainview and that draft went through.

"Q. What was the amount of that draft?

"A. That draft was for $15,958.22. This was in the beginning of the grain season. The grain was coming in slowly, and we sold the five loads then drafted on August 20th, 1979, and were paid for it.

"Q. All right, sir. On August 20th, based on five grain shipments, you drafted on Transco's account in the amount of $15,958.22 and you were paid for that, is that correct?

"A. That is correct."

■ We find the State has failed to sustain its burden of proof to show the requisite intent as alleged. The milo grain, was voluntarily sold to the corporation of which appellant was manager. We find the evidence is insufficient to show the property was obtained by deception. See also *Peterson v. State,* supra; *Phillips v. State,* 640 S.W.2d 293 (Tex.Cr.App.1982).

The judgment is reversed and an acquittal is ordered.

CAMPBELL, J., not participating.