**James De La GARZA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–87–00099–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 23, 1988.

Randy Schaffer, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

Appellant was charged in a lengthy indictment with theft of money in the amount

of more than $20,000. The indictment contained eighteen paragraphs. The first seventeen paragraphs alleged separate incidents which were then aggregated in the eighteenth paragraph into one offense pursuant to the authority of TEX.PENAL CODE ANN. § 31.09 (Vernon 1974). Appellant pled not guilty. Trial was to a jury. At the conclusion of the trial, the first, third, ninth, and seventeenth paragraphs of the indictment were either abandoned by the state or eliminated by the granting of appellant's motion for instructed verdict. The remaining allegations were submitted to the jury. The jury found appellant guilty of theft committed pursuant to one scheme or continuing course of conduct with an aggregate amount stolen in excess of $20,000, as charged in the indictment. The jury assessed appellant's punishment at confinement in the Texas Department of Corrections for a term of fifteen years and a fine of $10,000.

Appellant challenges the sufficiency of the evidence to support his conviction and the trial court's admission of evidence allegedly obtained as a result of an unlawful search and seizure. He also complains of other evidentiary rulings, as well as the prosecutor's jury argument and his criticism of appellant's trial counsel. We affirm.

■ Appellant owned and operated FMC Mortgage Company in Houston. Eleven complainants independently contacted him between July, 1983 and June, 1985 in an effort to obtain permanent financing for various projects. Appellant represented to each complainant that he had access to substantial funds and that he could either make the loan himself or obtain funding from his sources within a relatively short period of time. Appellant ordinarily would charge 1 percent of the amount of the loan as an initial fee, representing that if the loan was not made, the fee would be refunded except for $900 to cover appellant's costs. Based on these representations, the complainants paid fees for appellant to obtain the loans. None of the loans alleged in the indictment was ever funded. Eight of the complainants never received any refund of the fees paid to appellant. The fees paid by those eight complainants ranged from $10,000 to $32,900 and totaled more than $190,000. One complainant, Mr. Ralph Durden, had paid fees totaling $474,000 to appellant and received a refund of only $100,000. Another complainant, Susan Spaulding, received a refund of $4,500 and had paid fees totaling $16,500. Tony Mortezi, another complainant, was introduced to appellant by a broker named Roland Caerey. Mortezi paid appellant a fee of $22,873. When appellant failed and refused to refund any part of the fee, Caerey personally made a full refund to Mortezi because Caerey had taken Mortezi to appellant to secure the loan.

Appellant's first point of error is that the evidence is insufficient to establish that appellant intended that the loans not be funded at the time he accepted fees from the complainants. Appellant contends that the evidence shows only that he did not return money after failing to perform a civil contract and that the evidence is insufficient to show that he intended to deceive and defraud complainants at the time he took their money.

The state contends that appellant stole the money paid for fees by deception, misrepresenting that he could obtain loans for complainants when he in fact never intended to do so.

The eleven complainants testified in great detail concerning their dealings and transactions with appellant. In some instances appellant represented he had loan commitments from third party institutions when in fact he had no such commitment. In one instance appellant had committed his own company, FMC Mortgage Company, to make a $1,645,000 loan. Appellant repeatedly caused loan closings to be delayed for a variety of reasons; and when the borrower, Mr. Jim Hunt, and his banker arrived unexpectedly at appellant's office and confronted appellant, he admitted that FMC Mortgage Company could not

fund the loan but that the loan could be funded by a Mr. Michael Alburger. Mr. Hunt contacted Mr. Alburger and learned that Alburger had no knowledge of any such loan commitment.

It is not necessary to set out fully the testimony of all eleven complainants. The state in eighteen pages of its brief has accurately chronicled such testimony. Additionally, Mrs. Sharon Thompson and Miss Claudia Saxton testified at the trial. Mrs. Thompson testified that in the thirteen months that she worked at FMC Mortgage Company, from June of 1983 until August of 1984, she never knew of a single loan being funded. She further testified that she was responsible for writing the company checks and making deposits into the company bank account and that she never saw any evidence that the company had any source of funds other than the loan commitment fees being paid by the complainants or other loan applicants. Miss Saxton, who began working for FMC Mortgage Company while Mrs. Thompson was still in the office, and who continued to be so employed until April of 1985, testified that to her knowledge no loans were ever funded for any clients.

Appellant cites five cases in support of his contention that the evidence is insufficient to prove that appellant intended that the loans not be funded at the time he accepted fees from the complainants. Those five cases are: *Phillips v. State,* 640 S.W.2d 293 (Tex.Crim.App.1982); *Peterson v. State,* 645 S.W.2d 807 (Tex.Crim.App. 1983); *Cox v. State,* 658 S.W.2d 668 (Tex. App.—Dallas 1983, pet. ref'd.); *Wilson v. State,* 663 S.W.2d 834 (Tex.Crim.App.1984); and *Hesbrook v. State,* 194 S.W.2d 260 (Tex.Crim.App.1946).

All of the cases relied on by appellant are distinguishable from the instant case. Except for the *Wilson* case, each of the cases relied upon by appellant involved only one transaction between the defendant and complainant. The *Wilson* case involved three purchases of grain by the defendant from the complainant. The defendant did not pay complainant for these three purchases. In our opinion *Wilson* does not support appellant's argument. The three purchases were made within a ten day period of time and the evidence showed without dispute that the complainant had been selling grain to the defendant's company for several years and had always been paid for the grain until these three specific sales in the fall of 1979. Other evidence showed clearly that the defendant's business encountered financial difficulties because of poor management and lax financial control. On this evidence the Court of Criminal Appeals held the evidence was insufficient to show the grain was obtained by the defendant by deception.

Under Texas Penal Code Annotated section 31.01(2)(E) (Vernon 1974) deception means promising performance that the actor does not intend to perform or knows will not be performed. That same section of the Penal Code further expressly provides that failure to perform the promise without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed. In the instant case that other evidence is present. Eleven different complainants had remarkably similar experiences with appellant. Appellant promised each one that he would obtain the requested loan within a short period of time or would refund all but $900 of the advance fee. In each instance appellant repeatedly delayed loan closings for a variety of unsubstantiated reasons. Not only was no loan to any of the eleven complainants ever funded but the evidence also showed that during the one and one-half year period of time covered by the eleven complainants' transactions appellant never funded any loan for any applicant. This was strong circumstantial evidence that at the time appellant took the advance fees from the complainants he did not intend to perform the services he promised. *See Plante v. State,* 692 S.W.2d 487 (Tex. Crim.App.1985). Appellant's first point of error is overruled.

■ In point of error two appellant contends the trial court erred in admitting in

evidence appellant's personal and financial statements allegedly discovered as a result of an unlawful search and seizure. Appellant also challenges the testimony of seven of the complainants because their identity was discovered through files obtained in the search. Appellant asserts that the search of his business location and seizure of records were unlawful. However, neither the search warrant nor the affidavit in support of the search warrant is included in the record before this court. It is the responsibility of the appellant to ensure that the search warrant and the affidavit are included in the record on appeal. TEX. R.APP.P. 50(d); *Ortega v. State*, 464 S.W.2d 876 (Tex.Crim.App.1971). Since appellant failed to include the search warrant or the affidavit in the record on appeal, nothing is preserved for review. Point of error two is overruled.

■ In point of error three appellant asserts the trial court erred in permitting the complainant Voorhees to testify he obtained a default judgment against appellant in civil court in connection with his loan transaction. Voorhees attempted to obtain financing from appellant for a certified historic warehouse structure located in Rome, Georgia. Voorhees was seeking a loan for approximately $300,000 and in pursuit thereof tendered a one percent commitment fee of $12,935.64 to appellant. Appellant told Voorhees that FMC would be the lender on the loan and that FMC had the money to fund the loan. Appellant also stated that if the loan was not provided timely, all of Voorhees' commitment fee except $900 would be refunded.

After five unsuccessful attempts to schedule a loan closing with appellant, appellant told Voorhees that his loan could not be funded because his financial guaranty bond was unacceptable. The bond had earlier been considered acceptable by appellant. In April of 1985, after attempts to cure the defects had failed, Voorhees sent a demand letter to appellant for the return of the fee he had paid in advance. When appellant failed to refund the money, Voorhees filed a civil suit to recover the money. Appellant failed to answer the lawsuit and Voorhees obtained a default judgment. The default judgment was never satisfied.

Appellant's objection was that Voorhees' testimony that appellant never answered the civil suit and that Voorhees obtained a money judgment against appellant was irrelevant to any issue in the case. Appellant's objection was too general and vague to apprise the trial court of the alleged error and failed to preserve anything for review. *Smith v. State*, 683 S.W.2d 393, 404 (Tex.Crim.App.1984); *Ussery v. State*, 651 S.W.2d 767, 772 (Tex.Crim.App.1983); *Russell v. State*, 468 S.W.2d 373, 374 (Tex. Crim.App.1971). Appellant's point of error three is overruled.

■ In point of error four appellant contends the trial court erred in admitting in evidence a bankruptcy petition of FMC Mortgage Company signed and filed by appellant after the transactions made the basis of the indictment. The state offered the bankruptcy petition in evidence for the express purpose of showing that FMC Mortgage Company had no assets, which was contrary to statements made by appellant to some of the complainants to the effect that FMC itself could or would make the loans to the complainants of more than $1,000,000. Appellant's objection to this evidence was that the bankruptcy petition filed on July 31, 1985 was too remote in time relative to the transactions between appellant and the complainants. Also appellant's objection was that the contents of the bankruptcy petition showed only bad character and untruthfulness on the part of appellant. With respect to remoteness appellant argues that the bankruptcy petition was filed after the last of the transactions between appellant and the eleven complainants. The record shows, however, that of the thirteen advance fees paid by the eleven complainants five of such advance fee payments were made in the latter half of 1984 and six were made in the first half of 1985. The last advance fee payment was made on June 21, 1985, just forty days

before the bankruptcy petition was filed. We hold on these facts that the bankruptcy petition was not inadmissible by reason of remoteness in time to the transactions made the basis of the indictment and was relevant on the issue of intent of appellant at the time the advance fee payments were made. Point of error four is overruled.

■ In point of error five appellant contends the trial court committed reversible error when it permitted the state to introduce appellant's personal financial statement into evidence. On appeal appellant argues that the financial statements were irrelevant to the allegations of the indictment and unduly prejudicial. However, at trial appellant objected to the admission of his personal financial statement on the grounds that it was an unsigned personal financial statement and there was no evidence to link the use of appellant's financial statement to the deceptive acts perpetrated by appellant. The error asserted on appeal must be the same as the objection raised at trial. *Vanderbilt v. State,* 629 S.W.2d 709, 721 (Tex.Crim.App.1981) *cert. denied* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982). Since appellant's objection at trial does not comport to his assertions on appeal, his error was not properly preserved for review. Appellant's fifth point of error is overruled.

■ In point of error six appellant contends the trial court erred in failing to grant a mistrial after the prosecutor implied that appellant was on probation for stealing from a member of his family. During the punishment phase of the trial evidence was presented showing that appellant was on probation. Appellant's ten year probation term stemmed from two separate felony theft convictions in San Antonio. In addition to his probation, appellant was required to make restitution of $494,949.85 and release property to Joe De La Garza. Appellant contends the following argument by the state mandates a reversal of the judgment of the trial court:

> Everything you have heard throughout this entire trial about Jim De La Garza is bad and in [sic] all of the State of Texas, did one person other than his wife—and we all know she's lived wonderfully well all these years supported like a queen— did anybody and any family member other than his wife come in and say one good word for him? No. Just imagine if someone you knew, some neighbor on trial who was unfortunate enough to get themselves involved with some mess, all the people to come in and put a good word for the punishment hearing—"He's my neighbor. He's a good fellow. I've known him ten or twelve years, go to church with him. His kids play with my kids." Somebody, but not one, not even a family member testified, and, of course, you know he is required to make restitution to an individual by the name of De La Garza in San Antonio, Texas. What does that mean? It tells you a lot.

MR. CORNELIUS: We object to that. Excuse me. Excuse me, Mr. Turbeville. We object to that, Your Honor. We objected to it when they offered it. It was introduced in evidence. It's an improper conclusion or speculation on the part of the prosecutor and we object to it.

MR. TURBEVILLE: Right here in the conditions in evidence, it has, "Make restitution to Joe D. la (sic) Garza."

MR. ODEM: But the conclusion is what we object to. We object to what he is insinuating to the jury. It's not evidence.

THE COURT: That's right. You are not to speculate.

MR. CORNELIUS: Is the Court sustaining our objection?

THE COURT: Yes.

MR. CORNELIUS: Can we have an instruction?

THE COURT: The jury is not to consider that for any purpose.

MR. CORNELIUS: We would move for a mistrial because of the prejudicial effect of that statement.

THE COURT: Overruled.

(R. IX–166–168).

■ Texas courts will find reversible error only in light of the record as a whole

where the argument (1) is manifestly improper, harmful and prejudicial; (2) is violative of a statute; or (3) injects new and harmful facts into the case. *Thomas v. State*, 621 S.W.2d 158, 164 (Tex.Crim.App. 1981). Furthermore, an instruction to disregard cures error unless the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing its impression on the jury. *Crawford v. State*, 603 S.W.2d 874, 876 (Tex.Crim.App. 1980).

After carefully reviewing the record we find that the prosecutor's statement did not naturally and necessarily insinuate to the jury that appellant had stolen money from a family member. *Compare, Short v. State*, 671 S.W.2d 888, 890 (Tex.App.—Austin 1983, no pet.). We disagree with appellant's contention that the jury would necessarily conclude that he had stolen from a family member and was thus even more reprehensible. Furthermore, any error was cured by the trial court's instruction to disregard. Point of error six is overruled.

■ In point of error seven appellant maintains the trial court erred in overruling appellant's motion for mistrial after the prosecutor criticized defense counsel during summation at the punishment stage of the trial. The prosecutor, referring to defense counsel, argued as follows:

PROSECUTOR: Then I think I saw a little tear creep into Mr. Cornelius' eyes. Now you know why he is so well paid. That is good—

DEFENSE ATTORNEY: Striking at defendant over my shoulder. We object to that.

THE COURT: The jury is not to consider that.

DEFENSE ATTORNEY: Move for a mistrial.

THE COURT: That's overruled.

PROSECUTOR: He's got no evidence so tears.

DEFENSE ATTORNEY: Same objection.

THE COURT: Sustain the objection to that. Let's either get on to summing up evidence to this or rest.

DEFENSE ATTORNEY: Again, we ask for a mistrial.

THE COURT: That's overruled.

In his jury argument the attorney for appellant had made a lengthy appeal for sympathy and mercy. He stated that appellant had already been humiliated and punished severely by seeing what appellant's family had to go through since appellant's indictment. He speculated on how much appellant would suffer if he were locked up in jail for one, two or five Christmases and realized his wife and children were having bleak Christmases because of appellant's imprisonment. He then argues that it would be easy for the prosecutor to ask the jury to sentence appellant to five, ten or even fifteen years, and that the prosecutor is not paid for his sympathy, empathy or understanding.

■ It is settled that the approved general areas of jury argument, within which all proper arguments must fall are: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Todd v. State*, 598 S.W.2d 286, 296 (Tex.Crim.App.1980). Even when an argument exceeds the permissible bounds of the above areas, it will not constitute reversible error unless in light of the record as a whole the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts harmful to the accused into the trial proceeding. *Brooks v. State*, 642 S.W.2d 791, 798 (Tex.Crim.App.1982); *Todd v. State, supra.*

In our opinion the prosecutor's argument objected to by appellant was in general a response to the argument of appellant's attorney. In any event, however, the statements by the prosecutor were not so extreme or manifestly improper that an instruction to the jury not to consider the statements did not cure any error. Appellant's seventh point of error is overruled.

The judgment of the trial court is affirmed.