In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-00246-CR


____________________



MARCUS OWEN PHARES, Appellant



V.


 

THE STATE OF TEXAS, Appellee


 




On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 98705





 

OPINION



 A jury convicted appellant Marcus Owen Phares of felony theft of money in the
amount of at least $1,500 but less than $20,000. See Tex. Pen. Code Ann. § 31.03(a),
(e)(4)(A) (Vernon Supp. 2009). (1) The trial court assessed punishment at two years of
confinement in a state jail facility, then suspended imposition of sentence, placed Phares on
community supervision for five years, and ordered Phares to pay restitution in the amount of
$9,100. On appeal, Phares raises a single issue, in which he contends that the evidence was
legally insufficient to sustain his conviction. We reverse and render.

The Evidence


 Kylie Walker testified that she once lived with her former husband Daniel at a
residence they owned in Jefferson County, Texas. As a result of Hurricane Rita, the roof,
fencing, and vinyl siding of the home were damaged. On May 1, 2006, the Walkers entered
into a contract with Phares, a construction contractor who was also their neighbor, to replace
the vinyl siding. Pursuant to the contract, which specified that the first draw for materials
would be $7,100, the Walkers gave Phares a check for $7,100, and Phares cashed the check. 
According to Kylie, Phares "and two other workers came over, pulled off . . . about half of
the vinyl; and that was basically it." Kylie testified that Phares and his workers worked for
approximately three days. Kylie testified that Phares and his workers placed the old vinyl
siding in the Walkers' back yard and never removed it from the back yard. Kylie explained
that neither Phares or his workers ever removed the old insulation from the home, and
although new insulation was delivered and placed in the garage, it was never installed by
Phares or his workers. Kylie testified that new siding was never delivered.

 Kylie testified that on approximately May 12, 2006, Phares asked for an additional
$2,000. Phares told Kylie that he had used the previous check for materials, and "he needed
additional money to pay the workers for what they had already done[.]" According to Kylie,
Phares never provided any documentation showing how he had actually spent the money. 
Kylie gave Phares another check for $2,000. Kylie explained that after she gave Phares the
additional check, neither Phares nor his workers ever returned to her home to do any further
work. Kylie testified that Phares told her twice that the vinyl siding was on back order, and
she believed Phares intended to finish the job soon. The Walkers contacted the authorities
in late July or early August, and the Walkers sent a ten-day demand letter to Phares by
certified mail, return receipt requested. Although Phares received the letter, he did not
respond. The Walkers hired another contractor to finish the work, and they eventually asked
the Nederland Police Department to file a theft charge against Phares. Kylie testified that she
and her husband never instructed Phares not to return to the property.

 Daniel Walker testified that the roof, vinyl, and fencing of the home was damaged
after Hurricane Rita. According to Daniel, Phares placed a bid with the Walkers to replace
the vinyl siding, and they hired Phares to do the work and gave him a check for $7,100. 
Daniel explained that although the written contract did not contain a total contract price, the
parties agreed that the total cost would be $12,000. Daniel testified that Phares and some of
his workers removed about half of the vinyl from the house, but they did not remove the
insulation. Daniel estimated that the workers were at the home for two or three days. Daniel
testified that Phares asked for an additional $2,000, and Kylie gave Phares a check for that
amount on May 12, 2006. According to Daniel, Phares told them he needed the additional
money "because he needed to pay his people for work that they had already done, and to have
enough money left over to finish buying the vinyl siding[.]" Daniel testified that Phares and
his workers never returned after May 12, 2006, and no additional materials were delivered. 
Daniel testified that although he requested invoices and receipts from Phares, Phares never
provided them. Daniel and Kylie contacted the police and sent Phares a ten-day demand
letter, but Phares did not respond and never completed the job. Daniel testified that after he
and Kylie hired another contractor to complete the job, he instructed Phares to stay off of the
property.

 Detective James West of the Nederland Police Department testified that he was
assigned to the investigation. Detective West testified that the District Attorney's office
instructed the Walkers that to have a criminal complaint, they were required to send a ten-day
demand letter to Phares. The Walkers provided Detective West with a copy of the demand
letter, as well as documentation indicating that Phares received the letter on July 12, 2006. 
Detective West referred the case to the District Attorney's office on August 15, 2006, and

the District Attorney's office asked Detective West to contact Phares and to obtain Phares's
side of the story. Detective West contacted Phares, and Phares came to the Nederland Police
Department and spoke with Detective West. Detective West told Phares that if Phares could
provide documentation that he had secured materials or done a significant amount of work
at the Walkers' home, the matter "would be referred to a civil court, not a criminal court." 
Detective West testified that Phares indicated that he would return with documentation, but
he never provided any documentation. According to Detective West, Phares stated that his
attorney had advised him not to provide the documentation. Detective West subsequently
tendered the case to the District Attorney's office. The State rested at the conclusion of
Detective West's testimony.

 Phares testified that he is a contractor doing business as "Double D Contracting." 
Phares explained that he entered into a contract with the Walkers to remove vinyl siding and
to replace the insulation on their home. Phares testified that the total price was "$12,800-something." Phares testified that he had "people on the job [for] two weeks." According to
Phares, he asked the Walkers for an additional $1,200 because he needed to finish paying his
workers, but the Walkers instead gave him a check for $2,000. Phares testified that the work
he did was valued at $9,100, and he stated that he kept his receipts in the job folder. Phares
explained that after the job file was lost, he did not attempt to reconstruct the documents it
contained. Phares testified that he conducted all of his business on a cash basis. Phares
explained that he never ordered the vinyl siding because stores were not accepting orders at
that time. Phares estimated that he spent $4,000 to $4,200 on labor for the job, as well as
$3,000 to $3,500 for materials.

 Phares testified that he stopped taking the siding off because he "started running into
issues with Mr. and Ms. Walker." Phares testified that he never had a problem with the
Walkers until the Walkers began going through a divorce. Phares explained that he kept a
job file containing his measurements and receipts from the job in the Walkers' garage, but
the file "came up missing . . . when we started first having issues." Phares also testified that
he was asked to stay away from the property, which prevented him from finishing the job,
but he could not "remember the exact date."

 Ronda Ard, a carpenter who had worked for Phares at the Walkers' home, testified
that she worked for Phares at the Walkers' home there for approximately a week while
removing vinyl siding from three sides of the home and installing foam insulation. Ard
testified that she also removed nails, replaced a broken J channel, and "installed a couple of
fixtures that goes [sic] around lights that accommodate the vinyl siding as well." Ard
explained that she eventually stopped work because she "was told that the vinyl siding . . .
had come in, but it was the wrong one . . . and it was on reorder." Ard testified that she and
the other workers were paid for the work they did at the Walkers' home.

 Phares's uncle, Marvin Bailey, Jr., testified that he knew about the contract between
Phares and the Walkers to install siding on the Walkers' home. Bailey testified that he saw
Phares and the workers remove the old siding and install insulation. According to Bailey,
work eventually stopped due to problems between the Walkers and Phares.

Phares's Issue


 In his sole appellate issue, Phares argues that the evidence was legally insufficient to
support his conviction. Specifically, Phares asserts that the State failed to prove that he had
the requisite intent to deprive the Walkers of any property.

 Section 31.03(a) of the Texas Penal Code provides that a person commits theft "if he
unlawfully appropriates property with intent to deprive the owner of property." Tex. Pen.
Code Ann. § 31.03(a) (emphasis added). The indictment in this case alleged that Phares
unlawfully appropriated money owned by Daniel Walker. Appropriation of property is
unlawful if it is without the owner's effective consent, and consent is not effective if it was
induced by deception or coercion. Id. §§ 31.01(3)(A), 31.03(b)(1). Therefore, the State had
the burden to prove that when Phares received money from the Walkers, he intended to
unlawfully deprive them of their money, i.e., to take the money without intending to complete
the job as promised. See §§ 31.01(3)(A), 31.03(a), (b)(1). Phares asserts that the facts of this
case are indistinguishable from those present in Cox v. State, 658 S.W.2d 668 (Tex. App.--Dallas 1983, pet. ref'd), and he argues that as in Cox, the State failed to produce any evidence
that he "intended to deprive the complainant of any property[,]" but instead proved "merely
a contract dispute[.]" In Cox, the appellant entered into an agreement with the complainant
to do some repair work at the complainant's home. Cox, 658 S.W.2d at 669. The appellant
repaired the complainant's air conditioner and did some plumbing work, and the two
discussed additional work that needed to be done in the kitchen, including the purchase and
installation of a stove, oven, range top, and Vent-A-Hood. Id. Appellant returned to the
complainant's home with an oven, but did not connect it. Id. at 670. Appellant informed the
complainant that he had been unable to obtain the other appliances, and he asked for
additional money. Id. Appellant failed to return to complete the job, and he never delivered
the remainder of the appliances or returned the complainant's money. Id.

 In analyzing whether the State proved that appellant intended to deprive her of money
when he induced her to pay him, the Cox court began by noting that the complainant's
admission that appellant performed numerous services as promised "clearly negates that any
representation or promise by appellant was false at the time complainant surrendered any of
the money to him." Id. at 671 (citing Kinder v. State, 477 S.W.2d 584, 586 (Tex. Crim. App.
1971)). The Court concluded that the evidence merely established a dispute over the
appellant's performance of the remodeling contract. Id. Additionally, the Court noted that 
"[t]he mere fact that one fails to return or pay back money after failing to perform a contract,
for the performance of which the money was paid in advance, does not constitute theft." Id.
(citing Hesbrook v. State, 149 Tex. Cr. R. 310, 194 S.W.2d 260, 262 (1946)). The Court
concluded that the State failed to prove that appellant intended to deprive the complaint of
the money when he took it, and therefore found that the evidence was legally insufficient. 
Id.

 In its brief in this case, the State made no effort to distinguish Cox; in fact, the State's
brief does not even cite Cox. As previously discussed, the State was required to prove that
when Phares induced Daniel Walker to pay him money, Phares intended to unlawfully
deprive Walker of the money, i.e., to take the money without performing the agreed-upon 
work. See Tex. Pen. Code Ann. § 31.01(3)(A), § 31.03(a); see also Wilson v. State, 663
S.W.2d 834, 836-37 (Tex. Crim. App. 1984) (To prove theft, the State must show intent to
deprive the complainant of property at the time the appellant accepted remuneration pursuant
to the contract.). On this record, there is no evidence from which such a deceptive intent can
be inferred. See Cox, 658 S.W.2d at 669-71; see also Phillips v. State, 640 S.W.2d 293, 294
(Tex. Crim. App. 1982) (holding that when the appellant and the complainants entered into
a residential construction contract, the complainants made a down payment, and the
defendant took measurements, drew up plans, but ultimately failed to perform under the
contract, the evidence was insufficient to show that the defendant obtained the down payment
by deception). As in Cox and Phillips, in the case sub judice, the State failed to prove theft,
but instead merely proved the existence of a contractual dispute. Accordingly, we reverse
the trial court's judgment and render judgment that Phares is acquitted of theft.

 REVERSED AND RENDERED.


 

 STEVE McKEITHEN

 Chief Justice

Submitted on October 2, 2009

Opinion Delivered November 12, 2009

Publish

Before McKeithen, C.J., Kreger and Horton, JJ.


DISSENTING OPINION


 In its opinion, the majority holds that the evidence is legally insufficient to support the
jury's verdict. Although it applies the proper standard, in my opinion, the majority does not 
apply the standard properly to the facts of this case. In reviewing a record for legal
sufficiency, we review all of the evidence in the light most favorable to the verdict and determine
whether, based on the evidence and reasonable inferences from the evidence, rational jurors could
have found the essential elements of the crime beyond a reasonable doubt. See Roberts v. State, 273
S.W.3d 322, 326 (Tex. Crim. App. 2008) (citing Jackson v. Virginia, 443 U.S. 307, 318-319, 99
S.Ct. 2781, 61 L.Ed.2d 560 (1979)). 

 All of the decisions the majority cites in reaching its conclusion were decided prior
to the Texas Court of Criminal Appeals' decision in Geesa v. State, 820 S.W.2d 154 (Tex.
Crim. App. 1991), overruled on other grounds, 28 S.W.3d 570 (Tex. Crim. App. 2000). As
criticized and rejected in Geesa, "focusing on the existence of an 'outstanding reasonable
hypothesis inconsistent with the guilt of the accused', at least where the hypothesis of
innocence stems from inconsistencies in the evidence presented at trial, effectively repudiates
the jury's prerogative to weigh the evidence, to judge the credibility of the witnesses, and to
choose between conflicting theories of the case." Id. at 159. In my opinion, the majority
focuses on the existence of a contractual relationship between the parties and Phares's partial
performance of that contract in reaching its conclusion that there is no evidence to
demonstrate that Phares, from the relationship's beginning, intended to steal from the
homeowners. 

 In my opinion, the evidence before the jury allowed it to conclude that Phares did not
intend to fulfill the contract from its outset. The evidence shows that Phares contracted with
the homeowners to remove and replace the vinyl siding from their home. The contract, dated
May 1, 2006, reflects that Phares was to receive a "draw on material" in the amount of
$7,100.00. On that same date, Phares was given a check for $7,100.00; the check's
memorandum field recites: "For material-house." Subsequently, according to one of the
homeowners, Phares came for two or three days with two other workers and removed "about
half" of the vinyl siding from the house. With respect to the materials specified in the
contract, the evidence reflects that Phares purchased and had delivered insulation at a cost
of approximately $1,300.00. According to one of the homeowners, Phares never installed
the insulation.

 On May 12, Phares asked for an additional $2,000.00. Phares told one of the
homeowners he needed the money because "the money that we had given him [ ] was used
on the material, and he needed additional money to pay the workers for what they had already
done . . . ." On that same day, the homeowner gave Phares an additional check for $2,000.00. 
After that, neither Phares nor his workers returned to work on the home, nor were any
additional materials delivered to the homeowners. In July, the homeowners sent Phares a
letter, requesting that he complete the job or give them a full refund. Phares did not respond. 
 In summary, the record reflects that Phares received at least $7,100.00 that was
specifically designated as being for the purchase of materials. According to Phares, he
purchased approximately $1,300.00 of insulation materials. (2) He never purchased any
additional insulation or the vinyl, all of which would have been required to complete the
terms of his contract. After he was presented a demand for a full refund, Phares failed to
make any refund, despite the fact that he had received $7,100.00 for materials and
acknowledged spending much less than that amount on the materials specified in the
contract. In my opinion, reasonable jurors could infer from these facts that, from the moment
he entered the contract, Phares never intended to purchase the materials required to complete
the contract. The existence of the contract and the fact that he partially fulfilled the contract
are only circumstances of a reasonable hypothesis of innocence; the existence of these facts
should not remove from the jury-through the guise of our review of legal sufficiency-the
right to weigh the evidence to determine Phares's intent at the outset of his contractual
relationship with the homeowners. Thus, even though the evidence conflicts, a reasonable
juror could conclude that Phares committed felony theft. Because the majority holds that the
evidence is legally insufficient to support the jury's verdict, when in my opinion it is not, I
respectfully dissent. 



 ____________________________

 HOLLIS HORTON

 Justice


Dissent Delivered

November 12, 2009 

 
1. Because the applicable sections of the statute have not substantively changed since
the date of Phares's offense, we cite to the current version of the statute.
2. Phares also testified that after the work started, he purchased additional material that
he did not consider as being included within the original contract price. Phares testified that
he spent about $1,600.00 on these materials. Even if we include the expenditures for
materials that were not initially included in the contract price, the threshold amount of
$1,500.00 necessary to establish the commission of felony theft was still proven. See Tex.
Pen. Code Ann. § 31.03(a), (e)(4)(A) (Vernon Supp. 2009).