*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


# MEMORANDUM OPINION

No. 04-09-00128-CR

Russell Ray **NELSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 63rd Judicial District Court, Edwards County, Texas
Trial Court No. 1521-CR
Honorable Thomas F. Lee, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed: February 10, 2010

AFFIRMED

A jury convicted Russell Ray Nelson of theft in an amount greater than or equal to $1,500.00 and less than $20,000.00. The evidence showed Nelson was advanced $2,925.00 to install a septic tank but did not complete the job. In one issue, Nelson argues the evidence was legally insufficient to support his conviction because the State offered no evidence of any criminal intent to appropriate the monies advanced to him. After reviewing all of the evidence in the light most favorable to the

verdict, we conclude a rational jury could have found Nelson had the required intent to commit theft beyond a reasonable doubt. We, therefore, affirm the trial court's judgment of conviction.

### BACKGROUND

In June 2004, Antonio Garcia and Nelson reached an agreement for Nelson to install a septic tank on Garcia's land in Edwards County, Texas, for $2,925.00. On June 14, 2004, Garcia wired $2,925.00 to Nelson's account as payment for Nelson's services and other related fees. On June 28, 2004, Garcia received a septic tank permit application from Nelson by fax. Garcia filled out the permit application and faxed it back to Nelson on June 29, 2004. This permit application was never filed. On September 7, 2004, Nelson transported a backhoe to Garcia's property and told Garcia he would return the next day to begin working on the septic tank. Nelson appeared the next day and, after digging on the land with a backhoe, informed Garcia he had hit rock and would not be able to complete the job for the agreed-upon price. When Garcia asked Nelson to return the $2,925.00 already paid, Nelson said he no longer had the money and could not return it. Nelson explained he was having some personal problems and his business was struggling. Unsatisfied with Nelson's explanations, Garcia filed a formal complaint with the sheriff's office, which eventually led to Nelson's indictment in this case.

### LEGAL SUFFICIENCY STANDARD

In assessing legal sufficiency we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and the reasonable inferences therefrom, rational jurors could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.

Crim. App. 2009). Under this standard, jurors are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). In conducting a legal sufficiency review, the appellate court may not re-weigh the evidence and substitute its judgment for that of the jury. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

### THEFT BY DECEPTION

A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2009). Appropriation of property is unlawful if it is without the owner's effective consent. TEX. PENAL CODE ANN. § 31.03(b)(1) (Vernon Supp. 2009). Consent is not effective if it is induced by deception. TEX. PENAL CODE ANN. § 31.01(3)(A) (Vernon Supp. 2009). "Deception" is defined as:

> (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;
>
> (B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;
>
> (E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

TEX. PENAL CODE ANN. § 31.01(1)(A),(B), & (E) (Vernon Supp. 2009).

When a contract is involved, the offense of theft requires proof of more than an intent to deprive the owner of property and the subsequent appropriation of the property. *Baker v. State*, 986

S.W.2d 271, 274 (Tex. App.—Texarkana 1998, pet. ref'd). If no more than intent and appropriation are shown, nothing illegal is apparent because a contracting party typically has the right to deprive the owner of property albeit in return for consideration. *Id*. Thus, when a contract is involved, theft "requires proof of the false pretext or fraud in order to become a viable criminal prosecution." *Id*. Without such proof, there is nothing more than a civil claim in contract and it is not appropriate for criminal prosecution. *Id*. Stated another way, if money was voluntarily given to the accused pursuant to a contractual agreement and there is insufficient evidence in the record to show the money was obtained by deception, the conviction cannot stand. *Phillips v. State*, 640 S.W.2d 293, 294 (Tex. Crim. App. 1982).

To constitute theft, the evidence must show the accused intended to deprive the owner of the property at the time the property was taken. *See Wilson v. State*, 663 S.W.2d 834, 836-37 (Tex. Crim. App. 1984) ("Relevant intent to deprive the owner of property is the accused's intent at the time of the taking."). Because criminal intent is seldom susceptible to direct proof, it may be inferred from the conduct and words of the accused and the surrounding circumstances. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Coronado v. State*, 508 S.W.2d 373, 374 (Tex. Crim. App. 1974); *Baker*, 986 S.W.2d at 274-75.

### THE TRIAL EVIDENCE

At trial, the complaining witness, Garcia, testified he owned land in Edwards County, Texas. In June 2004, Garcia hired Nelson to install a septic tank on this land. During their initial discussions, which took place during the first part of June 2004, Nelson quoted Garcia $2,925.00 for the job and told Garcia a permit application was required. Nelson assured Garcia he would take care

of the permit application. Nelson also told Garcia to wire the $2,925.00 to Nelson's account and provided Garcia the account information. Garcia wired the money to Nelson's account on June 14, 2004. On June 28, 2004, Garcia received a permit application from Nelson by fax. The fax showed the application was sent from D & M Land Company. The application said it should be mailed back to Nelson and provided an address for this purpose. Garcia filled out the application, which asked for a legal description of the land. Garcia, however, did not provide the full legal description on the permit application. Instead, Garcia filled in the legal description as only "Indian Creek Ranch." On June 29, 2004, Garcia faxed the permit application back to D & M Land Company. Garcia and Nelson had subsequent conversations about the job, but Nelson never told him the permit application was not properly completed.

Two witnesses, Sam Fish and Bethel Stanley, testified about the septic tank permit application process. Fish, a septic tank installer and a site evaluator in Edwards County, said excavation and other installation work could not begin until after the permit application was completed and the site was evaluated by a site evaluator. Fish went on to testify that after the permit application and site evaluation were done, the documents needed to be approved by the site inspector, Stanley. Stanley reviewed the permit application and the site evaluation and, if these documents were in order, issued a construction permit. At the time of construction, Stanley came out to the site and checked to see if the work was in conformity with the permit application and the site evaluation.

Fish testified it was the landowner's obligation to fill in the legal description of the land and to properly complete the permit application. Fish also testified he would not take it upon himself to

search the courthouse records for a legal description and fill it in on a permit application. Fish further testified that, under this application process, excavation and construction on a septic tank could not begin until the permit was issued; however, before the permit issued a test hole could be dug to determine whether or not rock was present.

Fish testified he did not think Nelson asked him to perform a site evaluation on the Garcia land in 2004. Two years later, however, Fish was hired to install the septic tank on the Garcia land. Fish was paid $7,000.00 for this job—$2,500.00 to jackhammer through the subsurface rock and $4,500.00 for installing the septic tank. Fish testified that a large part of the Garcia project was transporting the equipment to the land and digging the test hole. Fish also testified he would not have made a $2,900.00 bid on the Garcia job.

Stanley, a state-licensed septic tank inspector, also testified about the steps in the septic tank permit application process. First, the property owner filled out the application and paid the application fee. Second, the site evaluation was performed by a site evaluator. Third, all of the paperwork was submitted to Stanley for his review and for the issuance of a construction permit. Thereafter, the property owner selected a licensed installer to install the septic system according to the construction permit.

Stanley further testified that normally the permit application and the application fee were provided to him at the same time. Stanley went on to state that the permit application needed to be completely filled out; Stanley did not accept permit applications without the legal description. Moreover, an installer could not go forward legally until the permit application was completed.

According to Stanley, he was a contract employee for Edwards County and he charged $275.00 for each site inspection. Pursuant to Stanley's arrangement with the county, he paid a $15.00 fee to the county when he submitted each permit application. Stanley also testified that each site evaluator charged a separate, additional fee.

Additionally, Stanley testified that no permit application was filed for the Garcia land in 2004; however, Fish filed a permit application and a site evaluation for the Garcia land in 2006. According to Stanley, a septic tank was installed on the Garcia land in 2006, and Fish was the site evaluator and installer on this job. Stanley testified that an installer could, prior to obtaining a permit, dig a test hole. Stanley further testified a test hole was a legitimate part of the process and the permit application did not need to be completed and approved before a test hole was dug. Stanley testified that subsurface rock was a problem in Edwards County and a provision addressing this contingency—a "rock clause"—was "mandatory." According to Stanley, an installer would not contract to do a job without including a rock clause.

Finally, Nelson's bank records were admitted in evidence. These bank records showed that Nelson's account received a wire transfer in the amount of $2,925.00 on June 14, 2004; however, by June 29, 2004, the account balance was only $249.48.

## DISCUSSION

Nelson argues the evidence was legally insufficient to show he had the required intent to commit theft by deception for two reasons. First, Nelson contends the uncontroverted evidence showed he did not commit a crime because he substantially performed the contract. Second, Nelson contends the evidence showed the entire matter was nothing more than a contract dispute and there

was no evidence from which the jury could have reasonably inferred he appropriated the monies advanced to him through malfeasance, trickery, or deception.

**1. Substantial Performance?**

Nelson contends the uncontroverted evidence showed he substantially performed the contract and this substantial performance negates any intent to commit theft through deception. *See Jacobs v. State*, 230 S.W.3d 225, 231-32 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("If a contract is partially or substantially performed, then intent to commit theft through deception is not shown by the evidence."). Nelson argues the evidence was uncontroverted that, by transporting a backhoe to Garcia's land and digging a hole, Nelson substantially performed the contract. We disagree. The nature and extent of Nelson's performance was controverted at trial. Fish testified that the road to Garcia's land was "difficult road" with lots of hills and gullies and it probably took Nelson hours to haul the backhoe up to Garcia's land. Additionally, Fish testified Nelson did part of the job by hauling the equipment to Garcia's land and digging the hole. On the other hand, Garcia testified the work performed by Nelson was nominal. According to Garcia, the road to his land was well-maintained and Nelson could not have spent much time hauling the backhoe to his land. Additionally, according to Garcia, Nelson spent only twenty to thirty minutes digging and excavated only about three bucketfuls of dirt.

The jury is the exclusive judge of the facts and the credibility of the witnesses. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). The jury is entitled to accept one version of the facts and reject another, or reject any part of a witness's testimony. *Id*. Here, the jury could have rejected Fish's testimony that Nelson's work was substantial and accepted Garcia's testimony that

the work performed by Nelson was minimal. Viewing the evidence in the light most favorable to the verdict, a rational jury could have reasonably concluded that Nelson did not partially or substantially perform the contract.

### 2. A Mere Contract Dispute?

Next, Nelson contends the evidence showed the entire matter was a mere contract dispute and the State failed to present any evidence from which the jury could have reasonably inferred he appropriated the monies advanced him through malfeasance, trickery, or deception. In evaluating this contention, we must pay particular attention to Nelson's conduct and words at the time the money was advanced to him. *See Wilson*, 663 S.W.2d at 836-37 (noting the relevant inquiry in evaluating criminal intent in a theft case is the accused's intent at the time of the taking).

First, Nelson emphasizes evidence which showed that Garcia failed to properly fill out the legal description on the permit application. Nelson contends this evidence showed Garcia hindered Nelson's ability to perform the job, and therefore, no criminal intent could be inferred from Nelson's failure to file the permit application. However, the evidence showed that Nelson told Garcia he would take care of filing the permit application, but despite this representation, failed to do so. Moreover, the evidence showed Nelson never informed Garcia that he needed to correct the permit application, nor did he inform Garcia of any deficiency in the permit application which would hinder installation. Additionally, the evidence showed the permit application faxed to Garcia itemized the allocation of the funds advanced. According to the permit application, the $2,925.00 advanced included an application fee of $275.00, a site evaluator's fee of $150.00, and an installer's fee of $2,500.00. However, the evidence showed Nelson paid neither the application fee, nor the site

evaluator's fee. The permit application also listed Fish as the site evaluator. Nevertheless, the evidence showed Fish was not asked by Nelson to perform a site evaluation on the Garcia land and did not receive a site evaluator's fee from Nelson. From this evidence, a rational jury could have inferred that Nelson, by his conduct and words at the time he took the money from Garcia, had the required intent to commit theft by deception.

Second, Nelson contends a rational jury could not have reasonably inferred the required intent from his failure to follow the permit application procedures because when he went out to Garcia's land in September 2004 he was merely digging a test hole. But the jury was not required to infer that Garcia was merely digging a test hole. Garcia testified that when Nelson came out to his land on September 7, 2004, Nelson indicated "he would be back the following day to commence the work on the septic tank." Thus, the jury was not required to conclude that Nelson was merely digging a test hole.

Third, Nelson contends the evidence showed his contract with Garcia could have been defended under the doctrine of "impracticability." Nelson points to evidence that subsurface rock was a common problem in the area and that, when Fish eventually installed the septic tank on the Garcia land in 2006, he also found rock on the Garcia land and charged Garcia additional money because of the rock. This same evidence, however, could be interpreted to support the jury's finding of the required criminal intent. A rational jury could have concluded that $2,925.00 was not a genuine bid for the installation job, particularly in light of the absence of any provision addressing subsurface rock. Thus, the agreement itself further supported a reasonable inference that Nelson had no intention of fulfilling his contractual obligation when he took Garcia's money.

Based on Nelson's failure to file the permit application in accordance with his representations, Nelson's failure to pay the required fees in accordance with the representations on the permit application, Nelson's failure to contact the site evaluator, Nelson's unusually low bid, and Nelson's failure to include a "rock clause" in the contract, a rational jury could have reasonably inferred that Nelson had no intention of fulfilling his contractual obligation when he took Garcia's money.

After examining all of the evidence in the light most favorable to the verdict, we conclude a rational jury could have found the existence of more than a mere contract dispute. We hold the evidence was legally sufficient to support the jury's finding that Nelson obtained the funds in question by deception. Nelson's sole issue is therefore overruled.

## CONCLUSION

The judgment of conviction is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH